489 A.2d 200

**COMMONWEALTH of Pennsylvania**

v.

**Jerome LIGHTMAN, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**LIGHTMAN DRUM COMPANY, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 23, 1984.

Filed Jan. 30, 1985.

Reargument Denied April 4, 1985.

Herman Bloom, Philadelphia, for appellants.

David F. Michelman, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and OLSZEWSKI and BECK, JJ.

OLSZEWSKI, Judge:

Appellants are a private, family-owned and run waste disposal company and its vice president (who owned 40% of its stock). At trial it was alleged that in 1972 Clarence Walker, a Streets Department bulldozer operator assigned to Philadelphia's Fort Mifflin Landfill, entered into an agreement with Marvin Lightman (father of Jerome Lightman), president and principal stockholder of Lightman Drum Company. Under the agreement, Walker would permit Lightman trucks to enter the landfill to dump toxic wastes, in return for a fixed amount of money per barrel. From 1972 until 1975, Lightman trucks regularly entered the landfill to dump drums, paying to Walker and his co-worker, Curtis Carson, at least $12,000 by checks signed and issued by Marvin or Jerome Lightman. The landfill was intended to be a disposal site for sterile fly-ash residue from the city incinerator, brought here by city vehicles or privately owned vehicles under contract with the City.

The findings of fact by Judge Gafni, below, show that the Pennsylvania Department of Environmental Resources and the City's Streets Department became aware of illegal dumping activity at the landfill in December 1975, when an unidentified truck was caught dumping at the site. However, the District Attorney's Office first became aware of the bribery and conspiracy charged in this case on February

28, 1979. On that date Carson confessed to a police detective that he had received money as bribes from Jerome Lightman and several other chemical waste disposal companies. An investigation into Lightman's complicity in the illegal dumping commenced at that time. The investigation was hampered by Jerome Lightman's non-residency status and by Lightman Drum's having no office in the Commonwealth from December, 1975 through March, 1980.

Jerome Lightman was arrested, and criminal complaints were filed against Lightman Drum and Jerome Lightman on March 28, 1980. After trial by jury, Jerome Lightman was convicted of 31 counts of bribery and also conspiracy. 18 Pa.C.S.A. § 4701; 18 Pa.C.S.A. § 903. Lightman Drum Company was convicted of 34 counts of bribery and also conspiracy. Jerome Lightman was sentenced to 1½ to 4 years imprisonment plus a fine of $3,000.00 on each bill, with each sentence to run concurrently. Lightman Drum Company received a suspended sentence.

The costs for clean-up of the Fort Mifflin Landfill are anticipated to run into the millions of dollars. No evidence has been presented concerning the impact of the toxic wastes on the environment or public health. This appeal follows the denial of timely motions in arrest of judgment and for a new trial.

Appellants raise four issues for review. First, appellants argue that the lower court erred in not finding the prosecution of these cases barred by the statute of limitations. We agree with the lower court that prosecution of these cases was not barred.

■ Appellants argue that insofar as the last act of illegal dumping occurred in 1975, the statute of limitations on these charges ran out in 1977. The applicable statute of limitations, 18 Pa.C.S. § 108, provides under subsection (f)(1) that the limitations period, normally two years, is tolled "during any time when the accused is continuously absent from this Commonwealth or has no reasonably ascertainable place of abode or work within this Common-

wealth...."[1] This standard was applied in *Commonwealth v. Stockard,* 489 Pa. 209, 413 A.2d 1088 (1980), in a case remarkably similar to the case at bar. Our Supreme Court held that the statute of limitations was tolled after a thorough search revealed that defendant had no legal residence or office within the Commonwealth. Although we stop short of creating a per se rule, in the instant case appellant's absence from the Commonwealth from 1975 to 1980 certainly foiled all efforts to ascertain his whereabouts. Appellant's fleeting contacts with the Commonwealth such as hospital visits, visits with unspecified relatives, or driving a company truck to unspecified locations in eastern Pennsylvania do not comport with notions of a "reasonably ascertainable" place of abode or work.

Appellants also argue that 18 Pa.C.S. § 108(f)(1) violates the requirements of the Equal Protection and Privileges and Immunities Clauses of the United States Constitution. As to the Equal Protection Clause, appellants assert that the statute discriminates between residents of the Commonwealth and non-residents by creating two classes of people: residents, for whom a definite period of limitation is always applicable; and residents who are continuously absent from the Commonwealth and non-residents, for whom the period of limitation is extended. We disagree.

The right to travel freely has been guaranteed constitutional protection by the Supreme Courts of the United States and Pennsylvania. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Stottlemyer v. Stottlemyer,* 458 Pa. 503, 329 A.2d 892 (1974). Nevertheless, the right to travel is subject to qualification when it runs afoul of legitimate state interests. In *Jones v. Helms,* 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981), the United States Supreme Court upheld a Georgia child support statute which made it a misdemeanor to abandon a dependent child, but provided that it was a felony offense

---

1. 18 Pa.C.S. § 108(f)(1) has been repealed and replaced by 42 Pa.C.S. § 5554 (1976). The language of section 5554 is identical to its predecessor, therefore the result we reach today is valid under either legislation.

for a parent to abandon a dependent child and to leave the state. The Court reaffirmed that the right to travel is a fundamental interest protected by the Constitution and that ... "a State may neither tax nor penalize a citizen for exercising his right to leave one State and enter another." *Id.* at 419, 101 S.Ct. at 2440. Nevertheless, the Court recognized that there are situations in which the service of State interests permit the rationally related qualification of a citizen's right to travel, including the situation where a person commits a crime in a State, then leaves before arrest or conviction. *Id.* at 421–422, 101 S.Ct. at 2441–2442.

> [T]here is clearly a distinction between one who ... leaves the state after committing a crime, resulting in the tolling of the statute of limitations during his absence, and one who has committed no crime but is deprived of a government benefit merely because he exercises his right to travel to another state. In the former circumstance, the state has an interest in assuring that the defendant is available locally not only to enhance the possibility of detection but also to avoid the burdens of extradition proceedings, should he be charged, his whereabouts become known, and he refuses to return voluntarily.

*Id.* at 421, fn. 18, 101 S.Ct. at 2441, fn. 18, *quoting Scherling v. Superior Court of Santa Clara County,* 22 Cal.3d 493, 501, 149 Cal.Rptr. 597, 601–602, 585 P.2d 219, 223–224 (1978).

The tolling provision of the statute of limitations, 18 Pa.C.S. § 108(f)(1), is rationally related to the Commonwealth's interest in enhancing the possibility of identification of criminals and in avoiding the burdens of extradition proceedings. We find a further valid legislative purpose in the statute in that it enhances the possibility of the detection of crime, where, as here, the evidence of the crime may be well hidden.

We reject appellant's argument that the tolling provision of 18 Pa.C.S. § 108 violates the Equal Protection Clause. That Clause establishes the fundamental principle that a State must govern impartially. *See Helms,* 452 U.S. at 423,

101 S.Ct. at 2442. Section 108(f)(1) applies equally to all criminal activity within the Commonwealth; nothing in appellants' argument or in the record suggests that the statute has been enforced against appellants any differently than it would be enforced against anyone else who engaged in the same conduct. *Id.* at 424, 101 S.Ct. at 2443.

Although not binding upon us, we find most persuasive the rationale of *Scherling v. Superior Court of Santa Clara County,* 22 Cal.3d 493, 149 Cal.Rptr. 597, 585 P.2d 219 (1978). Addressing the same challenge to its statute of limitations tolling provision, that court held that the rational relationship test was applicable, since the statute did not violate the defendant's right to travel and did not deprive the defendant of a fundamental interest in liberty. *Id.* 149 Cal.Rptr. at 602–603, 585 P.2d at 224–225. The tolling of Section 108 does not impose a penalty greater than that imposed upon criminals who remain in the state, but rather subjects those who choose to absent themselves to responsibility for a longer period of time. *See Scherling,* 22 Cal.3d at 503, 149 Cal.Rptr. at 603, 585 P.2d at 225.

We therefore measure appellants' equal protection claim by the less rigorous rational relationship standard applicable to rights which are not deemed to be fundamental. We have shown above that the Legislature could have determined that the detection of the crime, identification of the criminal and avoidance of extradition are more likely if the criminal remains in the state than if he departs. This assumption justifies tolling the statute of limitations for the period during which appellants may have avoided detection by leaving the jurisdiction.

 As to appellants' argument under the Privileges and Immunities Clause, it is settled that the Clause is to be narrowly construed and does not require that a State must always apply all of its laws or provide all of its services equally to residents and non-residents who may request it to do so. *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978); *Baldwin v. Montana Fish and Game Commission,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354

(1978). The Supreme Court has limited the Clause's applicability to privileges and immunities "bearing on the vitality of the Nation as a single entity." 436 U.S. at 383, 98 S.Ct. at 1860. Here, protection from prosecution for a crime for a specified period of time cannot be said to impact on the vitality of the Nation.

■ Appellants next argue that the lower court erred in finding no violation of due process resulting from the lapse of time between the criminal act and the indictment. We agree with the court below that appellants have been provided with the full protection of due process.

■ Appellants assert that during the time between the last illegal dumping, in 1975, and the filing of the indictment, in 1980, Marvin Lightman, Jerome Lightman's father, a material witness, passed away. It is settled that pre-arrest delay does not violate fundamental conceptions of justice except where the delay caused actual and substantial prejudice to the defendant and the government intentionally delayed prosecution solely to gain a tactical advantage over the defendant.[2] *Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978), quoting *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). *Daniels* elaborated:

> The Court, however, rejected ... [the] ... claim "that due process bars prosecution whenever a defendant suffers prejudice as a result of pre-indictment delay." Instead, it held that an inquiry into the prosecutions reasons for the delay is not required until a claim of prejudice to the accused is made out. "[*Marion*] establishes only that proof of actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid.... *Marion* makes clear

2. We note that appellants' claim is not directed toward a denial of his Sixth Amendment right to a speedy trial after arrest. *See e.g., Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972); *see also* Pa.R. Crim.P., Rule 1100, 42 Pa.C.S.

that proof of prejudice is generally a necessary but not sufficient element of a due process claim.... "

*Daniels,* 480 Pa. at 354, 390 A.2d at 179, quoting *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977) (citation omitted).

■ We find that appellants have failed in their initial burden of showing that the delay worked a material prejudice to his defense. Even where a potential witness has died, as did Marvin Lightman, or otherwise become unavailable, actual prejudice will not be found unless a defendant clearly establishes the subject matter and actual content of the witness' testimony and shows that it would have been exculpatory. *United States v. Mays,* 549 F.2d 670 (9th Cir.1977). Indeed, in *Lovasco* no prejudice was found despite the fact that two witnesses assertedly material to the defense had died during a pre-indictment delay.

In the instant case, appellants have produced no evidence that Marvin Lightman's testimony would have been exculpatory where the Commonwealth has only alleged that \ Jerome Lightman joined the conspiracy by participation. We are unwilling to speculate as to the content of Marvin Lightman's testimony. Appellants' unsupported claim that Marvin Lightman alone might have explained the circumstances surrounding the bribery and dumping activities is insufficient to show the substantial content of that explanation. Therefore, absent a threshold showing of the content of that testimony, we need not consider whether the delay was intentionally caused by the Commonwealth.

■ Appellants next assert that the lower court erred in admitting evidence of the nature of the material illegally dumped within the context of a trial for bribery. We hold that the evidence was relevant and properly admitted. The admission or exclusion of evidence is a matter for the trial judge's discretion and will not be reversed absent an abuse of that discretion. *Commonwealth v. Hart,* 479 Pa. 84, 387 A.2d 845 (1978). Here, the evidence was probative and relevant since it shed light on the principal facts necessary to establish essential elements of the crimes of bribery and

conspiracy involving the agreement to exercise discretion or violate a legal duty. *See Commonwealth v. Bellacchio*, 296 Pa.Super. 468, 442 A.2d 1147 (1982); *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

■ Finally, appellants assert that the lower court erred in charging the jury that they must find that the City of Philadelphia owned the Fort Mifflin Landfill and that the Hawthorne Company was licensed to dump at the site. We hold that the lower court correctly delegated these questions of fact to the jury's consideration.

We must consider appellants' argument in light of the general effect of the charge as a whole. *Commonwealth v. Irwin*, 494 Pa. 277, 431 A.2d 257 (1981). Here, the trial court, in its charge, continually emphasized that the determination of facts was left exclusively to the jury. (N.T. 815, 816, 819, 820, 825, 827–828). The question of municipal ownership of the site, supported by testimony, was specifically left to the jury. (N.T. 815). The question of the existence of the Hawthorne Company's "license" was immaterial, presented solely for the purpose of comparison of Lightman Drum Company's activity at the landfill. (N.T. 827–828). *See Irwin, supra; Commonwealth v. Douglas*, 461 Pa. 749, 337 A.2d 860 (1975).

The judgments of sentence are affirmed.

SPAETH, President Judge, files a concurring opinion.

BECK, J., joins OLSZEWSKI, J., except as to the equal protection analysis, and on that point she joins SPAETH, President Judge.

SPAETH, President Judge, concurring:

I concur in the result reached by the majority and with much of what the majority says. I write separately only to state the equal protection analysis that I believe should be applied.

Appellant argues that 18 Pa.C.S. § 108(f), as applied to him, violates the equal protection clause in that the statute

creates two classes to whom disparate treatment is afforded, residents and non-residents. Brief for Appellant at 12. Thus, he argues, the statute violates the fundamental mandate of the equal protection clause that the government may not treat similarly-situated citizens differently.

 When an equal protection claim is made, the initial inquiry must be to determine the applicable standard of constitutional review. Appellant asserts that Pa.C.S. § 108(f)(1) infringes upon his right to travel. Brief for Appellant at 13. The Supreme Court of the United States and the Supreme Court of Pennsylvania have both held that the right to travel freely throughout the United States is "fundamental", and that statutes that impose durational residency requirements on the receipt of state benefits violate the right. *See Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Stottlemyer v. Stottlemyer,* 458 Pa. 503, 329 A.2d 892 (1974). In determining the constitutionality of governmental action that infringes a fundamental right, a court must inquire whether the action is necessary to promote a "compelling" governmental interest. *See Shapiro v. Thompson, supra* 394 U.S. at 634, 89 S.Ct. at 1331. In practice, governmental activity will rarely withstand this strict scrutiny.

 Here, however, we need not subject Pa.C.S. § 108(f) to strict scrutiny, for it does not violate the fundamental right to travel. In *Scherling v. Superior Court of Santa Clara County,* 22 Cal.3d 493, 585 P.2d 219, 149 Cal.Rptr. 597, the Supreme Court of California faced a similar equal protection challenge to a tolling statute. It held that the appellant's right to travel was not infringed because he was not deprived of a benefit or subjected to greater penalty for leaving the state; rather, "he [was] faced with a tolled statutory period of limitations." *Id.,* 22 Cal.3d at 502, 585 P.2d at 224, 149 Cal.Rptr. at 602.

There is a further reason for finding that an elevated standard of constitutional review is not required here. The

cases in which the Supreme Court has strictly scrutinized infringements of the fundamental right to travel all occurred in a civil context. *See e.g. Dunn v. Blumstein, supra* (durational residency requirements deprive new residents of medical benefits); *Shapiro v. Thompson, supra* (durational residency requirements deprive new residents of welfare benefits). As the Court noted in *Jones v. Helms,* 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981), there was a distinction between these cases and the case before it, which was a challenge to a Georgia criminal statute that graded offenses according to whether or not a defendant remained in the state. In the civil cases, the Court noted, the challenged statutes "imposed ... burden[s] on the exercise of the right to travel by citizens whose right to travel had not been qualified in any way." By way of contrast, the Court found, "appellee's criminal conduct within the State of Georgia necessarily qualified his right thereafter freely to travel interstate." 452 U.S. at 421, 101 S.Ct. at 2441. Similarly, here, appellant's right to travel was qualified, if at all, not by an arbitrary distinction drawn by the government, but by his own criminal conduct, for which he must be amenable to prosecution by the Commonwealth for a fixed period of time.

Since appellant's fundamental right to travel was not infringed by governmental action, we should review the constitutionality of Pa.C.S. § 108(f) by applying the "rational relationship" test. This test requires a court to inquire whether it can conceive of a way in which the legislature might have deemed the challenged action to have been rationally related to the accomplishment of a legitimate government end. *See McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Applying this test, I find that the purpose served by 18 Pa.C.S. § 108(f) is clearly legitimate: it is to aid the Commonwealth's exercise of its traditional police powers of crime prevention, detection and prosecution by extending the period during which a suspected criminal is subject to a state's power to prosecute. Similarly, I have no trouble in concluding that the legisla-

ture could rationally have conceived that the statutory classification made by the tolling provision (residents and non-residents) would further this purpose. As the Supreme Court of California noted when analyzing a similar statute, "the Legislature could have determined that the detection of the crime and identification of the criminal are more likely if the criminal remains in the state than if he departs." *Scherling v. Superior Court of Santa Clara County, supra* 22 Cal.3d at 503, 585 P.2d at 225, 149 Cal.Rptr. at 603. For these reasons, I agree with the majority's conclusion that appellant's equal protection challenge must be rejected.

BECK, J., joins as to the equal protection analysis.