**Bridget GRIFFIN, Administratrix of the Estate of John Griffin, Deceased, Appellant,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2000.

Decided Aug. 11, 2000.

---

James F. Mundy, Philadelphia, for appellant.

Gino J. Benedetti, Philadelphia, for appellee.

Before DOYLE, President Judge, and COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, FLAHERTY, Judge, and LEADBETTER, Judge.

FLAHERTY, Judge.

Bridget Griffin, as administratrix of the estate of John Griffin (Griffin) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) which molded the jury's verdict to comply with the statutory cap on damages found at 42 Pa.C.S. § 8528(b) (the statutory cap). We affirm.

John Griffin and a SEPTA driver had a verbal confrontation on a bus. The bus driver indicated that he would not pick up John Griffin again. The following day, John Griffin was at the bus stop and the driver with whom he had the disagreement refused to stop to pick up John and as John ran along side the bus, he was run over by the bus, causing fatal injuries. John's estate instituted a suit against SEPTA.

After trial, the jury returned a verdict for Griffin in the amount of $2,163,000.00 which the trial court molded to an award of $250,000 in order to conform with the statutory cap on damages provided in the Judicial Code at 42 Pa.C.S. § 8528(b) which provides:

> **(b) Amounts recoverable.**—Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate.

Griffin appeals to this court, alleging that the trial court's order molding the verdict to conform to the statutory cap on damages constituted legal error. Griffin attacks the statutory cap on damages as being unconstitutional. Griffin argues that the statutory cap violates the Pennsylvania State Constitution. Specifically, Griffin argues that Article I, Section 11 of the Pennsylvania Constitution guarantees that

> [a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Griffin alleges that the statutory cap on damages violates this provision of the Constitution because although it permits the legislature to restrict suits against the Commonwealth, it does not permit the legislature to limit damages.[1]

In support of Griffin's interpretation of Article I, Section 11, Griffin points to Article III, Section 18 of the Pennsylvania Constitution which provides in part that "in no other cases [than workers' compensation] shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property...." Griffin argues that this provision circumscribes the manner in which the Legislature may direct suits to be brought against the Commonwealth. Griffin concedes that "the statutory cap has been upheld in the past on the basis of the language contained in the second sentence of Article I, Section 11. *Lyles v. Commonwealth of Pennsylvania[,] Department of Transportation,* 512 Pa. 322, 516 A.2d 701 (1986); *Smith v. City of Philadelphia,* 512 Pa. 129, 516 A.2d 306 (1986), *appeal dismissed for want of jurisdiction* [,] 479 U.S. 1074, 107 S.Ct. 1265, 94 L.Ed.2d 127 (1987)." Griffin's main brief at p. 8. In the face of such precedent, the only argument Griffin relies upon is that made by Justice Manderino in dissent found in *Brown v. Commonwealth,* 453 Pa. 566, 582–83, 305 A.2d 868, 876 (1973) which was quoted by Justice Papadakos in dissent in *Smith,* 512 Pa. at 144–145, 516 A.2d

---

**1.** Griffin's appeal presents a pure question of law and as such is subject to this court's plenary review. *Tomaskevitch v. Specialty Records Corp.,* 717 A.2d 30 (Pa.Cmwlth.1998).

at 314–15. Griffin asserts that the opinions in *Lyles* and *Smith* were wrongly decided.

 Even if it were true that the opinions in *Lyles* and *Smith* were wrongly decided, we, as an intermediate appellate court are bound by the decisions of the Pennsylvania Supreme Court and are powerless to rule that decisions of that Court are wrongly decided and should be overturned. *See, e.g., Nunez v. Redevelopment Authority of the City of Philadelphia,* 147 Pa.Cmwlth. 577, 609 A.2d 207, 209 (1992) ("as an intermediate appellate court, we are bound by the opinions of the Supreme Court."). Any argument that *Lyles* and *Smith* were wrongly decided is an issue for a forum other than this court. *See id.* Moreover, we are not convinced that those cases were wrongly decided. That the Commonwealth may bar suit against itself altogether by not waiving its right to sovereign immunity cannot be contested. *See, e.g., Smith,* 512 Pa. at 134, 516 A.2d at 309 ("the legislature has complete control in that it could abolish altogether the right to recover against the Commonwealth in tort actions.") Thus, if the General Assembly may abolish a cause of action, surely it has the power to limit that cause of action so long as that limitation does not otherwise offend the constitution. For example, the legislature could not limit a tort recovery based on the race of the plaintiff. For the greater power to abolish the cause of action certainly comprehends the lesser power to limit the cause of action. *In re Swanson Street,* 163 Pa. 323, 326, 30 A. 207, 208 (1894)("the power to do a greater act includes the power to do the lesser act...."); *Southwark Bank v. Commonwealth,* 26 Pa. 446, 450 (1856)("The greater power includes the lesser[.]"). Accordingly this issue does not afford Griffin relief.

 Next Griffin complains that the statutory cap violates the equal protection provisions of the State and Federal Constitutions. As an initial matter we note that the equal protection provisions of the Pennsylvania Constitution are analyzed by the Courts of this Commonwealth under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution. *Love v. Borough of Stroudsburg,* 528 Pa. 320, 325, 597 A.2d 1137, 1139 (1991). In performing an equal protection analysis we must decide which of three levels of scrutiny to apply to the challenged statute: strict, intermediate or rational basis scrutiny. *See, e.g., Smith.* The level of scrutiny which a court applies depends upon the nature of the classification in the statute and the nature of the interest which the classification implicates. *See id.* Our Supreme Court nicely summarized the equal protection analysis as follows:

> [t]he types of classifications are: (1) classifications which implicate a "suspect" class or fundamental right; (2) classifications implicating an "important" though not fundamental right of a "sensitive" classification; and (3) classifications which involve none of these. [*James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 145, 477 A.2d 1302, 1306 (1984).] Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

*Smith,* 512 Pa. at 138, 516 A.2d at 311. Herein, Griffin argues that the statutory cap impinges a fundamental right to obtain the full measure of damages, thus necessitating the courts to review the statutory cap under strict scrutiny. Griffin's main brief at pp. 16–19. Griffin asserts that the statutory cap would fail under the strict scrutiny standard and urges this court to apply the strict scrutiny standard. How-

ever, again, Griffin must acknowledge that our Supreme Court has previously applied an equal protection analysis to the statutory cap on damages and found the statutory cap to pass constitutional muster. *See, e.g., Lyles; Smith.* Moreover, in undertaking the equal protection analysis in those two cases, our Supreme Court decided that the statutory cap impinged upon an "important" but not fundamental right and that the statutory cap properly promoted an important government interest in preserving the public fisc. *See id.* In so deciding, the Supreme Court specifically rejected the contention that the statutory cap implicated a fundamental right or that strict scrutiny was applicable. *Smith,* 512 Pa. at 139, 516 A.2d at 311. Thus, as we are bound by our Supreme Court's precedent, Griffin's invitation to this court to apply strict scrutiny must of necessity be rejected. *Nunez.*

■■■ Griffin next argues that the statutory cap violates the federal constitution's substantive due process guarantee. While not as clear, it appears that Griffin alleges that the statutory cap also violates the state constitution's substantive due process guarantees. We need not separately analyze the two constitutions as the substantive due process protections afforded under both constitutions are analyzed the same and thus are coextensive. *See Pennsylvania Game Commission v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995). In support of this argument, Griffin relies upon *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). In *Duke Power,* the Supreme Court upheld a damages cap against a substantive due process attack. The statutory cap at issue in *Duke Power* involved a cap on damages arising from a nuclear accident in a federally regulated nuclear plant. In the course of its opinion, the Supreme Court noted several factors in concluding that the statute containing the cap at issue therein did not violate substantive due process. Among those factors were: 1) Congress' intent in enacting the statute was to foster growth of new technology by encouraging the creation of nuclear power plants; 2) the statute provided for no-fault liability and the assurance of a fund to pay claims: 3) the statute contained an express commitment by Congress to take whatever further steps are necessary to aid the victims of a nuclear accident. Griffin argues that because none of these factors are present in the statutory cap contained in the Judicial Code at issue herein, it follows that the statutory cap herein violates substantive due process. The flaw in this argument is that Griffin misreads *Duke Power* as setting forth a minimum threshold below which a cap on damages violates substantive due process. However, this is simply an erroneous interpretation of *Duke Power.* Rather, given that the courts have upheld other caps on damage awards in circumstances where none of the considerations in *Duke Power* to which Griffin points were dispositive it is apparent that the factors in *Duke Power* do not establish necessary elements for the finding that a statutory cap passes constitutional due process muster. *See, e.g., Davis v. Omitowoju,* 883 F.2d 1155 (3d Cir.1989)(upholding cap on medical malpractice actions); *Boyd v. Bulala,* 877 F.2d 1191 (4th Cir.1989)(same). Moreover, analysis of a substantive due process claim is the same analysis as performed under an equal protection claim. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Lewis v. Unemployment Compensation Board of Review,* 71 Pa.Cmwlth. 412, 454 A.2d 1191, 1193 (1983); *Wallace v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 342, 393 A.2d 43, 46 (1978). Thus, as our Supreme Court found that the statutory cap did not violate equal protection principles in *Lyles,* we must conclude that the statutory cap does not violate substantive due process.

■■■ Lastly, Griffin argues that because of inflation, the statutory cap of $250,000 enacted in 1978 has been eroded to merely a $100,000 value today and that to obtain

the $250,000 in today's dollars, the cap should be increased to $625,000. SEPTA responds that it is for the legislature to modify its cap and not for this court to do so. We agree because if the legislature were to set the cap today at $250,000 given that it would not be violative of the constitution, as held above, the mere passage of time will not render the amount of the cap unconstitutional due to the influence of inflation. Presumably the legislature was aware of the effects of inflation and could have opted for some cap indexed to inflation. That the legislature did not index the cap to inflation but set forth an absolute dollar amount does not render the cap unconstitutional. As observed in *Smith*, the purpose of the cap was to protect the public fisc; with the passage of time, and the consequent decrease in the value of the absolute dollar figure, simply because the $250,000 cap better promotes this purpose today than in 1978 is no reason to declare it unconstitutional.

Accordingly, as none of Griffin's issues affords her relief, the trial court's order molding the verdict to comply with the statutory cap is affirmed.

## ORDER

AND NOW, this 11th day of August, 2000, the order of the Court of Common Pleas of Philadelphia County, dated June 25, 1999, and docketed at No. 809 July Term 1997, Civil Division, molding the jury verdict, is hereby affirmed.