Russell PENNOCK and Antoinette Pennock, in their individual capacities and on behalf of the Estate of Daniel Pennock, Appellants

v.

Richard V. LENZI and Carmine D. Lenzi, in their individual capacities and dba Ridge Crest Farms, Melvin C. Gelsinger, Gale Gelsinger, Esther Gelsinger, Clarence D. Gelsinger, Rettew Associates, Inc., Berks County Conservation District and the Commonwealth of Pennsylvania Department of Environmental Protection.

Commonwealth Court of Pennsylvania.

Argued June 8, 2005.
Decided Sept. 15, 2005.

Daniel E. Brannen, Jr., Santa Fe, NM, for appellants.

David E. Turner, Wyomissing, for appellees, Richard V. and Carmine D. Lenzi.

James K. Thomas, Harrisburg, for appellees, Melvin C., Gale, Esther and Clarence D. Gelsinger.

Anthony S. Potter, Harrisburg, for appellee, Rettew Associates, Inc.

Alan S. Miller, Reading, for appellee, Berks County Conservation District.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEADBETTER.

Russell and Antoinette Pennock, in their individual capacities and on behalf of the estate of Daniel Pennock, appeal the order of the Court of Common Pleas of Dauphin County (common pleas) dismissing their complaint with prejudice on the basis that plaintiffs' wrongful death and survival actions are barred by the two year statute of limitations imposed by 42 Pa.C.S. § 5524(2). We affirm.

Plaintiffs' teenage son, Daniel, died on April 1, 1995, after contracting both rotavirus and staphylococcus infections. Nearly eight years later, on February 21, 2003, plaintiffs filed a complaint alleging that Daniel's death was caused by prolonged exposure to sewage sludge from a neighboring farm. In their complaint, plaintiffs asserted that they could not reasonably know until February 25, 2001 (when they read a newspaper article discussing a connection between sewage sludge and infections) how Daniel had contracted the infections which caused his death. Accordingly, plaintiffs argued that, under the discovery rule, which tolls the statute of limitations until a time when a tort victim can discover his injury and its cause through the exercise of reasonable diligence, their wrongful death and survival actions were timely filed. Plaintiffs sued Richard and Carmine Lenzi, in their individual capacities and doing business as Ridge Crest Farms, who processed and applied the sewage sludge; the Gelsinger family, who were the owners of the farm to which the sludge was applied; Rettew Associates, Inc., an engineering firm hired by the Lenzis to supervise the processing and application of the sludge; and the Commonwealth of Pennsylvania Department of Environmental Protection and the Berks County Conservation District, which issued permits to the Lenzis to operate their sludge business. Defendants filed a preliminary objection to plaintiffs' complaint on the ground that it was barred by

the two year statute of limitations.[1] The court of common pleas agreed, and dismissed plaintiffs' complaint with prejudice, relying upon *Pastierik v. Duquesne Light Company,* 514 Pa. 517, 526 A.2d 323 (1987). In *Pastierik* our Supreme Court confirmed an earlier plurality holding that the statute of limitations for wrongful death and survival claims begins to run, at the latest, at the time of death and cannot be extended further by the discovery rule. Plaintiffs now appeal.

Under 42 Pa.C.S. § 5524(2), "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two years. This two year time period shall be computed "from the time the cause of action accrued." 42 Pa.C.S. § 5502(a). Normally, a cause of action accrues at the time the injury is inflicted. *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). However, in some cases where the injury or the fact that it was caused by the conduct of another is not known or discoverable through the exercise of reasonable diligence, courts have invoked the discovery rule, which delays the accrual of a cause of action and tolls the statute of limitations until a time when the injury and its cause can reasonably be discovered. *Ward v. Rice,* 828 A.2d 1118 (Pa.Super.2003).

In *Anthony v. Koppers Company,* 496 Pa. 119, 436 A.2d 181 (1981), our Supreme Court held, in a plurality opinion, that the statute of limitations for a wrongful death action could not be tolled by the discovery rule.[2] The *Anthony* court reasoned:

> Statutory references to the occurrence of an "injury" or the accrual of a "cause of action" are subject to judicial interpretation as to the degree of knowledge a plaintiff must possess before the statute will start to run. In contrast, the requirement that a wrongful death action be brought within [a certain period of time] after a definitely established event,—"death"—leaves no room for construction.

496 Pa. at 124, 436 A.2d at 184. The *Anthony* court further held that the discovery rule did not apply to survival actions because "survival statutes do not create a new cause of action; they simply permit a personal representative to enforce a cause of action which had already accrued to the deceased before his death." *Anthony,* 496 Pa. at 125, 436 A.2d at 185. Therefore, by definition, the statute of limitations to bring a survival action must begin to run, at the latest, at death. *Id.*

In *Pastierik,* our Supreme Court reaffirmed its holdings in *Anthony,* again refusing to apply the discovery rule to wrongful death or survival actions. *Pastierik,* 514 Pa. at 525, 526 A.2d at 327. Because Section 5524(2) and Section 5502(a) govern the statute of limitations for wrongful death, survival, and personal injury actions, the plaintiff in *Pastierik* argued, as plaintiffs do in the present case,

---

1. We note that preliminary objections are not the proper form in which to raise a defense based upon the statute of limitations, and would, themselves, be subject to preliminary objections. See Pa. R.C.P. Nos. 1028(a) and 1030(a). However, the Pennocks do not challenge the procedure by which the issue was raised.

2. The statute of limitations for wrongful death actions at the time *Anthony* was decided was the precursor to the present statute. It provided that "the [wrongful death] action shall be brought within one year after the death, and not thereafter." *Anthony,* 496 Pa. at 123, 436 A.2d at 183 [quoting Section 2 of The Act of April 26, 1855, P.L. 309, 12 P.S. § 1603, repealed by Section 2(a) of The Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202].

that the discovery rule should apply equally to all of those actions. *Pastierik,* 514 Pa. at 521, 526 A.2d at 325. The *Pastierik* court rejected this argument, noting that extending the application of the discovery rule to wrongful death actions would "greatly expand, theoretically to infinity, the time period during which wrongful death actions could be brought." *Pastierik,* 514 Pa. at 521, 526 A.2d at 325–326. This, the court stated, was not the intent of the legislature in enacting the statute of limitations because death, which is a "definitely established event," puts survivors on clear notice to exercise reasonable diligence to discover the cause, and, therefore, is significantly different from personal injury, which "may be inflicted without immediate symptoms or immediately determinable causes." *Pastierik,* 514 Pa. at 522, 526 A.2d at 326. The court also recognized that extensive scientific examinations, including autopsy, which are not restrained in scope as would be examinations of living persons, can be (and often are) performed on a deceased tort victim to discover the cause of death and whether wrongful conduct was involved. *Id.* Thus, the discovery rule is not needed in a wrongful death case to prevent the statute of limitations from working an injustice on a reasonably diligent plaintiff. Accordingly, the court rejected the application of the discovery rule to wrongful death actions. *Id.*

■ As for survival actions, the *Pastierik* court agreed with the principle set forth in *Anthony* that a survival action is merely a cause of action which had already accrued to a decedent before his death and is now being prosecuted by his representatives. *Pastierik,* 514 Pa. at 523, 526 A.2d at 326. Therefore, the statute of limitations begins to run when the decedent, and not his representatives, could have discovered his injury and its cause through the exercise of reasonable diligence. *Id.* Moreover, even if the injury or its cause was not reasonably discoverable to the decedent, the clear notice afforded to his survivors and the extensive scientific examinations available to them make extending the statute of limitations, beyond the two years after death prescribed by the legislature, unnecessary. *Pastierik,* 514 Pa. at 523, 526 A.2d at 327. Thus, the court held that, for survival actions, the cause of action accrues and the two year statute of limitations begins to run, at the latest, at death. *Id.*

■ Plaintiffs argue on appeal that the *Pastierik* decision violates the remedies, due process, and equal protection clauses of the Pennsylvania Constitution, as well as the privileges and immunities, due process, and equal protection clauses of the United States Constitution. Alternatively, plaintiffs contend that even if *Pastierik* is constitutional, it is wrong as a matter of Pennsylvania law.[3]

We begin our analysis by rejecting plaintiffs' last argument out of hand. *Pastierik* is clearly the law of Pennsylvania, announced in an unequivocal holding of our Supreme Court. Even if we believed it were wrongly decided—which we do not— we would be bound to follow it, as was common pleas. *See Lovrinoff v. Pa. Turnpike Comm'n,* 3 Pa.Cmwlth. 161, 281 A.2d 176 (1971). Next, with respect to plaintiffs' constitutional arguments, we flatly reject the notion that in deciding *Anthony* and *Pastierik* our Supreme Court was unmindful of its obligation to interpret statutory law in accordance with constitutional mandates. Simply because the court did not address these constitutional issues di-

---

**3.** Plaintiffs' appeal presents only questions of law which are subject to this court's plenary review. *Reich v. Berks County Intermediate Unit No. 14,* 861 A.2d 1005 (Pa.Cmwlth.2004).

rectly should not, in any way, suggest that it set such concerns aside, to be considered on some other occasion. On the contrary, we not only assume that our Supreme Court always takes constitutional principles into account when deciding issues of common law, we find its analysis in *Pastierik* specifically addresses the concerns underlying plaintiffs' constitutional claims, even though not discussing them in the context of constitutional arguments.

Moreover, these arguments have been directly addressed by two other courts, the United States Court of Appeals for the Third Circuit and the Superior Court of Pennsylvania. In *Gravinese v. Johns–Manville Corp.*, 324 Pa.Super. 432, 471 A.2d 1233, 1238 (1984), the Superior Court rejected the claim that the decision in *Anthony* (*Pastierik* had not yet been decided) "rendered the statute [of limitations for wrongful death and survival actions] unconstitutional on equal protection and due process grounds." *Id.* at 1237. It noted that "[s]ubject only to the rule that a reasonable time to sue must be allowed, statutes of limitations pertain to remedies and do not impair fundamental rights." *Id.* at 1238. The Third Circuit similarly rejected these arguments in *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548 (3d Cir.1985).[4] In so doing, the court noted that:

> There is no absolute and unlimited constitutional right of access to the courts. All that is required is a reasonable right of access—a reasonable opportunity to be heard.... Plaintiffs' due

process claim must therefore fail because here the period is reasonable.

Plaintiffs also insist that by distinguishing between personal injury claims on the one hand and wrongful death and survival actions on the other, i.e., by not extending time periods for the latter through the discovery rule while extending them for the former, the statutes as interpreted violate equal protection. The distinction does not implicate a suspect class nor a fundamental right; consequently, if the distinction is rationally related to a legitimate government interest it does not violate equal protection. A distinction between wrongful death and survival actions, and those personal injury actions brought by living plaintiffs, is related to the state's interest— and those of the survivors—in the prompt settlement of the economic and legal affairs of the deceased. The state legislature may not be said to be irrational in encouraging a personal representative to bring suit promptly.

*Id.* at 554–56 (citations omitted). We agree. Moreover, as set forth above, the court in *Pastierik* extensively documented the reasonable grounds for providing a more restrictive limitation on death claims than on personal injury actions.

▮ Nonetheless, plaintiffs assert the notion that, contrary to these holdings, Article I, Section 11 of the Pennsylvania Constitution, often called the "remedies clause," provides an absolute and fundamental right to sue for any injury. Thus they argue that the remedies clause mandates strict scrutiny of any limitation of that right.[5] In making this argument,

---

4. We note that the equal protection and due process provisions of the Pennsylvania Constitution are analyzed under the same standards employed by the United States Supreme Court in reviewing like claims under the United States Constitution. *Griffin v. Southeastern Pa. Transp. Auth.*, 757 A.2d 448, 451 (Pa. Cmwlth.2000).

5. When reviewing equal protection claims, a court must first decide which level of scrutiny is to be applied to the challenged state action: strict, intermediate, or rational basis. If the state action infringes upon a fundamental right or implicates a suspect classification, such as race or religion, then it is analyzed using strict scrutiny. *Curtis v. Kline*, 542 Pa.

plaintiffs misunderstand the import of Article I, § 11, which provides:

All courts shall be open; and every man for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

As our Supreme Court has explained, "the guarantee of a 'remedy by due course of law' in Article I, Section 11, means that a case cannot be altered, in its 'substance', by a subsequent law ..." *Ieropoli v. AC & S Corp.*, 577 Pa. 138, 149, 842 A.2d 919, 926 (2004). In other words, once a cause of action has accrued it becomes a vested right, which under Article I, Section 11, may not be eliminated by subsequent legislation. *Id.* at 155–56, 842 A.2d at 930. It simply does not mean that the General Assembly may not abridge or limit a cause of action which has not yet accrued.[6] Indeed, a claim that the remedies clause established a fundamental right to sue the Commonwealth, thus requiring strict scrutiny of the limitation of actions provision of the Metropolitan Transportation Authorities Act,[7] was rejected in *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 477 A.2d 1302

(1984). In that case, our Supreme Court reasoned:

The question, therefore, as to whether the notice classification affects a fundamental right is to be determined by whether the right affected—that of access to the courts in suits against the Commonwealth—is to be found in the constitution. To ask the question is to answer it. As we have seen, Art. I, § 11 of the Pennsylvania Constitution explicitly reserves to the Commonwealth the power to determine in which cases it will be sued. This power, in turn, is derived from the Eleventh Amendment to the United States Constitution, permitting the states to exercise sovereign immunity, should they choose so to do. We conclude, therefore, that there is no "fundamental right" to sue the Commonwealth, for such right is explicitly limited by Art. I, § 11 of the Constitution of Pennsylvania. Since it is not contended that any suspect classification has been made, and we have concluded that there is no fundamental right at issue, strict scrutiny of the statute is inappropriate.

*Id.* at 146, 477 A.2d at 1306. The court adopted the same analysis, reaching the same conclusion with regard to the statutory cap on claims against political subdivisions in *Smith v. City of Philadelphia*, 512 Pa. 129, 516 A.2d 306 (1986), *cert. denied*, 479 U.S. 1074, 107 S.Ct. 1265, 94 L.Ed.2d 127 (1987). *See also Griffin v. Southeastern Pa. Transp. Auth.*, 757 A.2d 448 (Pa. Cmwlth.2000), and cases cited therein (re-

---

249, 666 A.2d 265 (1995). If the state action infringes upon an important interest, such as a liberty interest or some other interest vital to the individual, or implicates a sensitive classification, such as gender, then intermediate scrutiny is utilized. *Id.* If the state action involves neither of these, it will be analyzed under a rational basis level of scrutiny. *James v. Southeastern Pa. Transp. Auth.*, 505 Pa. 137, 144, 477 A.2d 1302, 1305 (1984). The person challenging the state action bears the burden of showing that it fails to satisfy the applicable standard of scrutiny. *Paz v.*

*Pa. Housing Finance Agency*, 722 A.2d 762, 766 (Pa.Cmwlth.1999).

6. It is undisputed, of course, that both the statute of limitations at issue and the decision in *Pastierik* occurred long before the death of Daniel Pennock.

7. The provision at issue in *James*, Section 2036 of the Metropolitan Transportation Authorities Act of 1963, P.L. 984 § 36, formerly 66 P.S. § 2036, was repealed by Act of April 28, 1978, P.L. 202, No. 53, § 2(a)(1371).

jecting fundamental right claim, and finding statutory cap on damages against the Commonwealth does not offend due process or equal protection clauses under intermediate standard of review.)

 The Pennocks attempt to distinguish *James* by arguing that since the remedies clause contains no reservation to the Commonwealth to determine which suits may be brought against private entities, such right must be unqualified. The flaw in this reasoning is that, although the clause is silent both as to any right and any limitations on such right to sue non-Commonwealth parties, it is well-established that the General Assembly may limit or even abrogate causes of action which have not yet accrued. Even causes of action which existed at common law may be abolished by the legislature. *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978). "In interpreting [the remedies clause], we should remember that no one 'has a vested right in the continued existence of an immutable body of negligence law. . . . [T]he practical result of a [contrary] conclusion would be the stagnation of the law in the face of changing societal conditions.'" *Id.* at 279–80, 382 A.2d at 720. *A fortiori,* if actions which existed at common law may be abolished, so may statutory causes of action created by the legislature,[8] and if they may be abolished, they may be limited without offending the remedies clause. *James; Smith,* 512 Pa. at 134, 516 A.2d at 309; *Griffin,* 757 A.2d at 451.

 In addition, as in *James,* since no fundamental right is implicated, and no suspect classification is alleged, strict scrutiny of the limitation is inappropriate. Rather, the interest is an "important" one, deserving of intermediate scrutiny. *James,* 505 Pa. at 146–47, 477 A.2d at 1306. To pass muster under this level of scrutiny, the governmental interest must be an important one, and the classification must be narrowly drawn so as to be closely related to the objectives of the legislation and affect only those persons intended to be affected. *James,* 505 Pa. at 147–48, 477 A.2d at 1307. Although *Gravinese* and *Ciccarelli* applied a rational basis test, and *Pastierik* did not engage in a due process or equal protection analysis as such, we believe that the reasons described in those cases amply satisfy the intermediate scrutiny standard of review.

 As noted, statutes of limitations serve an important state interest by preventing a plaintiff from sleeping on his rights "until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency,* 321 U.S. 342, 348–349, 64 S.Ct. 582, 88 L.Ed. 788 (1944). In sum, they prevent the passage of time from adversely affecting an alleged tortfeasor's ability to defend himself. Accordingly, the discovery rule should only be applied when it is necessary to prevent the statute from working an injustice on a reasonably diligent plaintiff. As the *Pastierik* court recognized, because of the clear notice that death provides, combined with the ability to perform unrestricted testing to discover its cause, the need for a discovery rule is less compelling in wrongful death or survival actions than in ordinary injury claims, which may be "inflicted

---

**8.** Wrongful death actions are solely creatures of statute, having not existed at common law. *Hodge v. Loveland,* 456 Pa.Super. 188, 690 A.2d 243, 245 (1997), *citing Frazier v. Oil Chemical Co.,* 407 Pa. 78, 179 A.2d 202 (1962). At common law, an action for personal injury did not survive death and, therefore, a survival action on behalf of the decedent's estate is also a statutory creation. *See Moyer v. Phillips,* 462 Pa. 395, 399, 341 A.2d 441, 442–43 (1975).

without immediate symptoms or immediately determinable causes ... [and] shrouded by indefinite factors." 514 Pa. at 522, 526 A.2d at 326. The distinction between personal injury actions and wrongful death and survival actions is thus reasonably related to serving the legitimate state interest of preventing a plaintiff from sleeping on his rights to the detriment of the defendant. Therefore, as in *James,* "we conclude that the statute passes constitutional muster under both the Fourteenth Amendment and Art. I, § 26 of the Pennsylvania Constitution." 505 Pa. at 148, 477 A.2d at 1307.[9]

■ The Pennocks' state and federal due process claims fail for the same reasons, as the concerns of those provisions are closely intertwined with the concerns of the equal protection and remedies clauses. Our Supreme Court has long held that "[n]o one has a vested right in a statute of limitations or other procedural matters. The legislature may at any time alter, amend or repeal such provisions without offending constitutional restraints. So long as there is no omission of a remedy for the enforcement of a right for which a remedy existed when the right accrued, a want of due process is in no way involved." *Bible v. Dep't of Labor & Indus.,* 548 Pa. 247, 254, 696 A.2d 1149, 1152 (1997) [quoting *Agostin v. Pittsburgh Steel Foundry Corp.,* 354 Pa. 543, 548–49, 47 A.2d 680, 683 (1946) (superseded, as recognized in *Bible,* by 1974 amendments to the Workers' Compensation Act)]. As the United States Supreme Court concluded in *Chase Securities Corporation v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), as a matter of constitutional law,

"statutes of limitation go to matters of remedy, not to destruction of fundamental rights." Thus, so long as the statute of limitations provides for a reasonable time period for a plaintiff to bring suit, the statute will be upheld. *Id. Accord Gravinese,* 471 A.2d at 1238. Because of the clear notice that death provides, combined with the ability to perform an autopsy to discover its cause, the two years prescribed by the legislature afford a decedent's representatives a reasonable opportunity to bring suit.

■ We also must reject plaintiffs' argument that *Pastierik* violates the privileges and immunities clause of the United States Constitution. It is well-settled that the clause is to be narrowly construed, and does not require that a state always apply all of its laws equally. *Com. v. Lightman,* 339 Pa.Super. 359, 489 A.2d 200, 204 (1985). Furthermore, the Supreme Court has severely limited the applicability of the clause to only those privileges and immunities "bearing on the vitality of the Nation as a single entity." *Baldwin v. Mont. Fish and Game Comm'n,* 436 U.S. 371, 383, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). It cannot be said that our Supreme Court's refusal to apply the discovery rule to wrongful death and survival claims, claims which would not exist but for the grace of the Pennsylvania legislature, has any impact on the vitality of the nation.

Accordingly, we see no constitutional error in common pleas' application of *Pastierik* to the present case. Further, we agree with the trial court that, as their claims are barred by 42 Pa.C.S. § 5524(2), granting plaintiffs leave to amend their complaint would be fruitless,[10] and thus

---

9. We note that some courts have found that wrongful death and survival claimants are not in the same class of persons as personal injury claimants, and, thus, an equal protection analysis is unnecessary. *See, e.g., Tiedeken v.*

*Tiedeken,* 363 N.W.2d 909, 911 (Minn.Ct.App. 1985). *See also Gravinese,* 471 A.2d at 1238.

10. *See Kearney v. City of Phila.,* 150 Pa. Cmwlth. 517, 616 A.2d 72 (1992) (holding

affirm the dismissal of plaintiffs' complaint with prejudice.[11]

### ORDER

AND NOW, this 15th day of September, 2005, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is hereby AFFIRMED.

that a trial court did not abuse its discretion by denying a plaintiff leave to amend where further amendment could not circumvent defendant's immunity).

**11.** Because we hold that the discovery rule is inapplicable to wrongful death and survival claims and, thus, the statute of limitations bars plaintiffs' claims, we need not address the issue of plaintiffs' failure to substantially state a claim against Rettew Associates, Inc.