### Ashley ZAUFLIK, Appellant

v.

### PENNSBURY SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2013.

Decided July 3, 2013.

---

Thomas R. Kline, Philadelphia, for appellant.

Stephen A. Cozen, Philadelphia, for appellee.

Paul C. Madden, Robert S. Hawkins & Robert J. Fitzgerald, Philadelphia, for Amicus Curiae SEPTA, PA Public Transportation Assoc., Port Authority of Allegheny County and the PA Turnpike Commission.

Geoffrey L. Beauchamp, Horsham, for Amicus Curiae Delaware Valley Insurance Trust.

Lowell Thomas, Philadelphia, for Amicus Curiae Philadelphia Housing Authority and Philadelphia Housing Development Corporation.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Section 8553 of what is commonly known as the Political Subdivision Tort Claims

Act[1] (Tort Claims Act) limits recovery of damages against political subdivisions of the Commonwealth of Pennsylvania (Commonwealth) to $500,000 in the aggregate for tort injuries arising from the same transaction. The question presented is whether this limitation as applied to Ashley Zauflik ("Zauflik"), who as a 17-year-old student lost her leg when a school district (District) bus ran over her, is constitutionally permissible. Specifically, Zauflik appeals from three post-trial Orders of the Court of Common Pleas of Bucks County (trial court) that: (1) molded the $14,036,263.39 jury verdict in her favor to reflect the application of the Tort Claims Act; (2) added delay damages in the amount of $2,661.63 to the molded verdict rather than to the original jury verdict; and (3) sanctioned District $5,000 pursuant to Rule 4019 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 4019, for not timely disclosing the existence of an excess insurance policy in the amount of 10 million dollars. Zauflik argues that: (1) the limitations on damages set forth in Section 8553(b) of the Tort Claims Act (statutory cap), 42 Pa.C.S. § 8553(b), violates several provisions of the Pennsylvania and United States Constitutions; (2) the delay damages should have been added to the jury verdict and not to the molded verdict; and (3) the trial court erred by imposing only a $5,000 sanction against District for its discovery violation when it should have struck District's reliance upon the Tort Claims Act.

This appeal arises out of a Complaint filed by Zauflik against District, a local agency under the Tort Claims Act, and other defendants,[2] for catastrophic injuries Zauflik suffered on January 12, 2007. The injuries occurred when a District school bus driver applied the accelerator instead of the brake on District bus # 42 as he shifted the bus into gear, causing the bus to run off the road onto an adjacent sidewalk and run over Zauflik.[3] (Complaint

---

1. 42 Pa.C.S. § 8553. Section 8553 of the Tort Claims Act addresses limitations in damages, and provides, in relevant part:

   (a) General rule.—Actions for which damages are limited by reference to this subchapter shall be limited as set forth in this section.

   (b) Amounts recoverable.—Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000 in the aggregate.

   . . .

   (d) Insurance benefits.—If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

   *Id.*

2. All defendants other than District were dismissed with prejudice before trial by Stipulation and Order. (Stipulation of Counsel, Docket Entry, November 23, 2011, R.R. at 17a; Order Approving Stipulation of Counsel, November 29, 2011, R.R. at 67a–68a.) Other defendants included: Thomas Built Buses, Inc., Freightliner, LLC, Bendix Commercial Vehicle Systems, LLC, Williams Controls, Inc., and the school bus driver. (Complaint at 1–5, R.R. at 22a–26a.) Zauflik's Notice to the Attorney General, as mandated by Rule 235 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 235, that she was challenging the constitutionality of the Tort Claims Act states that "[Zauflik] resolved her claims against the product manufacturers in a confidential settlement. On the eve of trial, the parties stipulated to the dismissal of Zauflik's claims against the bus driver." (Praecipe to File Notice to Attorney General, February 2, 2012, and Letter from Zauflik's Counsel to Attorney General (February 1, 2012) at 1.)

3. District admits that this was the cause of the accident as concluded by the Falls Township Police and the National Transportation Safety Board. (Stipulation Order at 1–2, R.R. at 67a–68a.)

¶¶ 31–41, R.R. at 27a–29a; Order Approving Stipulation of Counsel (Stipulation Order), November 29, 2011, at 1–2, R.R. at 67a–68a.) The bus was owned and operated by District. Zauflik's injuries included, among others, pelvic and leg crush injuries resulting in an above-the-knee amputation of her left leg.

District admitted liability for Zauflik's injuries pursuant to Section 8542(b)(1) of the Tort Claims Act.[4] After a jury trial on damages only, on December 5, 2011, the jury returned a verdict in the amount $14,036,263.39 representing $2,936,263.39 for past and future medical expenses and $11.1 million for non-economic damages. (Jury Verdict at 1, R.R. at 70a.)

On December 8, 2011, District's counsel learned of the existence of a $10,000,000 excess insurance policy while attending an executive session of District's school board and, on December 9, 2011, informed Zauflik's counsel about the policy. (Letter from District's counsel to Zauflik's counsel, via e-mail, December 9, 2011, R.R. at 391a.) During discovery District had informed Zauflik's counsel that it had $1,000,000 in primary insurance coverage, but did not reveal the existence of the $10,000,000 excess policy, or that it had a total of $11,000,000 in insurance coverage. District asserts that this was an inadvertent discovery violation (District's Br. at 57), but Zauflik contends that District deliberately concealed the existence of the excess policy until after the jury verdict. (Zauflik's Br. at 9.)

District and Zauflik each filed motions for post-trial relief. District requested that the trial court mold the jury verdict to $500,000—the amount of the statutory cap. (District's Motion for Post–Trial Relief, R.R. at 72a–113a.) Zauflik opposed District's motion to mold the verdict on the grounds that the Tort Claims Act violates the Pennsylvania and United States Constitutions both facially and as applied, and filed a motion that the verdict not be molded, and judgment be entered based on the original verdict. (Zauflik's Answer and Memorandum in Opposition to District's Motion for Post–Trial Relief, R.R. at 463a–646a.) Zauflik filed a Motion for Delay Damages and a Motion for Sanctions pursuant to Rules 238(a)(2) and 4019 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. Nos. 238(a)(2), 4019. (Motion for Delay Damages, R.R. at 114a–26a; Motion for Sanctions, R.R. at 127a–415a.)

In the Motion for Sanctions, Zauflik requested that the trial court strike District's reliance on the Tort Claims Act as a defense and/or limitation on damages, and sought leave to take additional discovery about the circumstances of District's failure to disclose the excess policy, additional time to review District's responses to this discovery, an evidentiary hearing, and an order that District produce amended, verified responses to Zauflik's first set of interrogatories. (Motion for Sanctions at

---

4. 42 Pa.C.S. § 8542(b)(1). Section 8542(b)(1) of the Tort Claims Act provides:

    **(b) Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

    **(1) Vehicle liability.**—The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. *As used in this paragraph,* "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

*Id.*

¶¶ 24–29, R.R. at 133a.) Following a telephone hearing on January 27, 2012, (Hr'g Tr., January 27, 2012, at 1–51, R.R. at 1099a–1149a), the trial court entered an order permitting Zauflik to conduct limited post-trial discovery in support of the Motion for Sanctions. (Trial Ct. Order, February 6, 2012.) Zauflik served post-trial discovery requests and took the depositions[5] of District's business administrator, Isabel Miller, both in her personal capacity and as District's designee, and several additional District representatives, including the following third-party administrators for the School Claims Service: David Witmer, Kelby Leonard, and L. Roeg Williamson.[6]

On May 25, 2012, after briefing and oral argument on the post-trial motions, the trial court filed a Memorandum Opinion and Orders molding the jury verdict to $500,000 pursuant to the Tort Claims Act and adding delay damages to the molded verdict in the amount of $2,661.63. The Trial Court then granted Zauflik's Motion for Sanctions against District for not disclosing the existence of the excess policy and ordered District to pay Zauflik's counsel the amount of $5,000. (Trial Ct. Orders, May 25, 2012, R.R. at 876a–86a.) In its Memorandum Opinion, the trial court acknowledged "that the circumstances of this case create an unfair and unjust result," and stated that despite the existence of a total of $11,000,000 in insurance policy coverage, the statutory limitation on damages for a local agency pursuant to Section 8553(b) of the Tort Claims Act required the trial court to mold the jury verdict of $14,036,263.39 to $500,000, "effectively reducing the jury's determination of fair and adequate compensation for the damages Zauflik suffered as a result of [District's] negligence by ninety-six (96) percent." (Trial Ct. Op. at 3.) The trial court stated further that it was "constrained by precedent to find [Section] 8553(b) to be constitutional," although it expressed concern in so doing:

> This Court is of the opinion that a re-evaluation of the constitutionality of the statutory cap on damages on equal protection grounds is necessary. It is this Court's belief that an individual's right to a full compensatory recovery in a tort suit is decidedly *not* outweighed by the governmental interest of "preservation of the public treasury as against the possibility of unusually large recoveries in tort cases."

(Trial Ct. Op. at 4–5 (emphasis in original).) This appeal followed.[7]

On appeal, Zauflik argues that the Tort Claims Act's $500,000 statutory cap on damages should be reevaluated and declared unconstitutional because it violates the following provisions of the Pennsylvania Constitution:[8] (1) Article I, Section 11

---

5. These post-trial depositions are not included in the certified record in this case.

6. Mr. Leonard testified that the School Claims Service is not the insurer, but a third-party administrator that provides the administrative aspects of claims adjustment. (Leonard's Dep., March 19, 2012, at 14, R.R. at 806a.)

7. This Court's scope of review of the constitutionality of a statute is plenary. *Konidaris v. Portnoff Law Associates, Ltd.*, 598 Pa. 55, 69–70, 953 A.2d 1231, 1239 (2008). "[A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute 'clearly, palpably, and plainly' violates the Constitution." *Id.* Moreover, this Court, as an intermediate appellate court, is bound by holdings of the Pennsylvania Supreme Court. *Nunez v. Redevelopment Authority of the City of Philadelphia*, 147 Pa.Cmwlth. 577, 609 A.2d 207, 209 (1992).

8. In *Commonwealth v. Edmunds*, 526 Pa. 374, 388, 586 A.2d 887, 894 (1991), the Pennsylvania Supreme Court established four factors to be briefed and analyzed in each case when a

("open courts" provision); (2) Article III, Section 18 ("anti-cap" provision); (3) Article V, Section 1 ("separation of powers" provision involving the judicial power to set remittitur of jury awards); and (4) Article I, Section 6 ("right-to-jury" provision). Zauflik argues that the statutory cap also violates the Equal Protection Clauses of both the Pennsylvania and United States Constitutions, equal protection principles as applied to this case, and the Due Process Clause of the United States Constitution. Zauflik further contends that the delay damages added to the molded verdict should have been added to the jury verdict, and that the trial court erred by imposing only a $5,000 sanction against District for its discovery violation. We now review each of Zauflik's arguments.[9]

## I. Article I, Section 11 of the Pennsylvania Constitution— "Open Courts"

Multiple constitutional challenges have been raised unsuccessfully against the Tort Claims Act since its enactment soon after the Pennsylvania Supreme Court's abrogation of the common law doctrines of governmental and sovereign immunity. *See Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 587, 305 A.2d 877, 878 (1973) (abrogating the common law doctrine of governmental immunity), *superseded by statute*, Tort Claims Act, *as recognized in Michel v. City of Bethlehem*, 84 Pa.Cmwlth. 43, 478 A.2d 164, 165 (1984). *See also Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 400, 388 A.2d 709, 716 (1978) (abrogating the common law doctrine of sovereign immunity), *superseded by statute*, Act commonly known as Sovereign Immunity Act, 42 Pa. C.S. § 8521–8528, *as recognized in Kapil v. Association of Pennsylvania State College and University Faculties*, 504 Pa. 92, 98, 470 A.2d 482, 485 (1983). The General Assembly, pursuant to the authority granted to it by Article I, Section 11 of the Pennsylvania Constitution, made a policy decision after the Supreme Court's abrogation to reestablish the immunity of political subdivisions from suit, while simultaneously excepting claims for injuries resulting from eight separately described causes, which resulted in the enactment of the

---

provision of the Pennsylvania Constitution is implicated. These factors are: (1) the text of the Pennsylvania constitutional provision; (2) history of the provision, including Pennsylvania case-law; (3) related case-law from other states; and (4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. *Id.* at 390, 586 A.2d at 895. *But see Commonwealth v. White*, 543 Pa. 45, 50, 669 A.2d 896, 899 (1995) (stating that failure to follow the *Edmunds* protocol does not constitute a fatal waiver of state constitutional claims); *Commonwealth v. Swinehart*, 541 Pa. 500, 509 n. 6, 664 A.2d 957, 961 n. 6 (1995) (noting that *Edmunds* factors are "helpful" but not mandatory). The parties did not explicitly follow the *Edmunds* methodology in their briefs to this Court. *See generally Jones v. City of Philadelphia*, 890 A.2d 1188, 1194 (Pa.Cmwlth.2006).

9. Numerous *amici* have filed briefs in support of District in this appeal: (1) the Pennsylvania Public Transit Association, the Southeastern Pennsylvania Transportation Authority, the Port Authority of Allegheny County and the Pennsylvania Turnpike Commission; (2) the County Commissioners Association of Pennsylvania, the Pennsylvania Chamber of Business and Industry, the Pennsylvania Municipal Authorities Association, the Pennsylvania Municipal League, the Pennsylvania School Boards Association, the Pennsylvania State Association of Boroughs, the Pennsylvania State Association of Township Commissioners and the Pennsylvania State Association of Township Supervisors; (3) Delaware Valley Insurance Trust; (4) Crawford Area Transportation Authority and Indiana County Transit Authority; (5) State Association for Transit Insurance; and (6) the Philadelphia Housing Authority and the Philadelphia Housing Development Corporation.

Tort Claims Act. *See* Section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b). This legislative policy decision was consistent with the Supreme Court's conclusion that the Framers of Article I, Section 11 "intended to allow the Legislature, if it desired, to choose cases in which the Commonwealth should be immune...." *Mayle,* 479 Pa. at 400, 388 A.2d at 717. Article I, Section 11 of the Pennsylvania Constitution, known as the "Open Courts" provision, provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. 1, § 11. In an early constitutional challenge to the Tort Claims Act, our Supreme Court pronounced the second sentence of Article I, Section 11 to be "an integral, unequivocal and controlling portion" of this Constitutional provision, and so upheld the constitutionality of the Tort Claims Act against wrongful death and survival claims by Carroll, a plaintiff who sought recovery for the death of her son who committed suicide while in the custody of a county detention home. *Carroll v. County of York,* 496 Pa. 363, 365–66, 437 A.2d 394, 395–96 (1981). Carroll, whose claims were barred entirely by the immunity of the Tort Claims Act because her claims were not within any of the exceptions,[10] argued that the Tort Claims Act violated Article I, Section 11 by " 'clos[ing]' the courts to potential plaintiffs by denying them a 'remedy by due course of law.' "

*Id.* at 366, 437 A.2d at 396 (quoting Article I, Section 11 of the Pennsylvania Constitution). In *Carroll,* the Pennsylvania Supreme Court decided that "the [General Assembly]'s authority 'to choose cases in which the Commonwealth should be immune' encompasses political subdivisions." *Id.* at 367, 437 A.2d at 396 (quoting *Mayle,* 479 Pa. at 400, 388 A.2d at 717). The Supreme Court found that the challenger's argument, "based solely on the first sentence of Article I, Section 11, completely ignores the concluding sentence of that section." *Id.* at 366, 437 A.2d at 396. The Supreme Court concluded that "[i]t is not our function to displace a rationally based legislative judgment," because it "is within the province of the [General Assembly] to determine that certain bars to suit are, in its judgment, needed for the operation of local government." *Id.* at 369–70, 437 A.2d at 397.

Before *Carroll* was handed down, "a gas explosion in ... Philadelphia killed seven persons, injured many others, and caused extensive property damage." *Smith v. City of Philadelphia,* 512 Pa. 129, 132, 516 A.2d 306, 308 (1986). Seventy-two claimants filed forty-four separate actions against the City of Philadelphia, Philadelphia Gas Works, and the Philadelphia Facilities Management Corporation. *Id.* Thereafter, "Smith and two other plaintiffs filed a declaratory judgment action seeking a declaration that the ... Tort Claims Act is unconstitutional in its limitation of damages to an aggregate amount of $500,000." *Id.* The Supreme Court again examined Article I, Section 11 and reaffirmed its reasoning in *Mayle, Ayala* and *Carroll* that the Framers of the Constitu-

---

**10.** *Carroll* also challenged the constitutionality of the $500,000 statutory cap on damages of the Tort Claims Act, but the Supreme Court noted that because Carroll was not among those who can recover under any one of the eight exceptions to governmental immunity enumerated in the Tort Claims Act, this issue was not properly before the Supreme Court. *Carroll,* 496 Pa. at 370 n. 4, 437 A.2d at 397 n. 4.

tion granted to the legislative branch the power to control "not only the cases, but also the manner and the courts in which cases against the Commonwealth may be brought...." *Smith,* 512 Pa. at 134, 516 A.2d at 309. The Supreme Court explained that, because Article I, Section 11 authorizes the General Assembly to abolish a cause of action, "surely it may also limit the recovery on the actions which are permitted," adding that "[t]o hold otherwise would be, in our view, to grant with one hand what we take away with the other," which would be "absurd" or at least "unreasonable." *Id.* The Supreme Court, therefore, concluded in *Smith* that Article I, Section 11 should not be read to prohibit the General Assembly from enacting a limit on the tort liability of its political subdivisions. *Id.* at 134–35, 516 A.2d at 309.

Zauflik contends that *Smith* incorrectly interpreted the second sentence of Article I, Section 11 because it guarantees an individual's right to obtain full redress and full compensation. Zauflik further argues that a political subdivision is not the Commonwealth and emphasizes that the Framers were aware of political subdivisions, but did not include them in Article I, Section 11 which specifies only the "Commonwealth." (Zauflik's Br. at 42.) Zauflik points to Justice Larsen's dissenting opinions in *Carroll,* 496 Pa. at 370–86, 437 A.2d at 398–406 (Larsen, J., dissenting), *Smith,* 512 Pa. at 141–54, 516 A.2d at 312–19 (Larsen, J., dissenting), and *Mascaro v. Youth Study Center,* 514 Pa. 351, 364–71,

523 A.2d 1118, 1125–28 (1987) (Larsen, J., dissenting), in which he applies a plain meaning approach to the second proviso of Article I, Section 11, giving full effect to both sentences consistent with Article I's basic purpose of preserving individual rights. Zauflik highlights the following from Justice Larsen's dissent in *Carroll:*

> A political subdivision is most certainly not "the Commonwealth" and the parties do not seriously argue that the second proviso of Article I, § 11 supports the legislature's enactment of the Act. Such an argument is quickly answered with two same-day decisions of this Court. *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973), declined to overrule the "doctrine" of sovereign immunity in the absence of legislative action waiving the Commonwealth's immunity. *Ayala v. Philadelphia Board of Public Education, supra,* did not feel compelled, on the other hand, to await legislative action in order to abolish immunity's local government counterpart. The difference between these cases, as observed by Justice Pomeroy, was the second proviso, which provided a constitutional basis for sovereign immunity but not for governmental, thus freeing the courts to act in the latter case, while restricting them in the former.

*Carroll,* 496 Pa. at 380, 437 A.2d at 403 (Larsen, J., dissenting). Zauflik also advocates for our consideration of decisions by other states that have rejected similar liability limitations.[11]

---

11. Zauflik contends that liability limitations based on a state's constitutional provisions have been rejected in other states and cites the following cases (in alphabetical order by state) as examples in her brief at page 43: *Smith v. Department of Insurance,* 507 So.2d 1080 (Fla.1987); *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251 (1988); *Pfost v. State of Montana,* 219 Mont. 206, 713 P.2d 495 (1986); *Carson v. Cusack,*

120 N.H. 925, 424 A.2d 825 (1980); *Clarke v. Oregon Health Sciences University,* 343 Or. 581, 175 P.3d 418 (2007); *Knowles v. United States,* 544 N.W.2d 183 (S.D.1996); and *Lucas v. United States,* 757 S.W.2d 687 (Tex. 1988). District responds by noting that Pennsylvania is not an anomaly and that courts throughout the country have rejected constitutional challenges to statutes limiting tort recovery from states and their subdivisions,

■ We are aware, as was the trial court, that our Supreme Court has rejected these arguments. As an intermediate appellate court, we must "follow and apply that [law] ... to establish some measure of predictability and stability in our case law." *Malinder v. Jenkins Elevator & Machine Co.*, 371 Pa.Super. 414, 538 A.2d 509, 513 (1988). An opinion decided by a majority of our Supreme Court "becomes binding precedent on the courts of this Commonwealth." *Commonwealth v. Tilghman,* 543 Pa. 578, 588, 673 A.2d 898, 903 (1996).[12] Therefore, in accordance with Supreme Court precedent, and that of this Court,[13] we must find that the Tort

citing the following cases in their brief at pages 16–18: *Cauley v. City of Jacksonville,* 403 So.2d 379 (Fla.1981); *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983); *Packard v. Joint School District No. 171,* 104 Idaho 604, 661 P.2d 770 (Idaho Ct.App.1983); *Seifert v. Standard Paving Co.,* 64 Ill.2d 109, 355 N.E.2d 537 (1976), *overruled on other grounds by, Rossetti Contracting Co. v. Court of Claims,* 109 Ill.2d 72, 92 Ill.Dec. 521, 485 N.E.2d 332 (1985); *Vallien v. State ex rel. Department of Transportation and Development,* 812 So.2d 894 (La.Ct.App.2002); *Gooslin v. State of Maryland,* 132 Md.App. 290, 752 A.2d 642 (2000); *Lienhard v. State,* 431 N.W.2d 861 (Minn.1988); *Turrentine v. Brookhaven, Mississippi School District,* 794 F.Supp. 620 (S.D.Miss.1992); *Wells by Wells v. Panola County Board of Education,* 645 So.2d 883 (Miss.1994); *Richardson v. State Highway and Transportation Commission,* 863 S.W.2d 876 (Mo.1993); *State v. Silva,* 86 Nev. 911, 478 P.2d 591 (1970); *Estate of Cargill v. City of Rochester,* 119 N.H. 661, 406 A.2d 704 (1979); *Hale v. Port of Portland,* 308 Or. 508, 783 P.2d 506 (1989); *Texas Department of Mental Health and Mental Retardation v. Petty,* 817 S.W.2d 707 (Tex.App.1991); *Tindley v. Salt Lake City School District,* 116 P.3d 295 (Utah 2005); and *Sambs v. City of Brookfield,* 97 Wis.2d 356, 293 N.W.2d 504 (1980).

12. This is "[t]he rule of *stare decisis* [that] declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Tilghman,* 543 Pa. at 588 n. 9, 673 A.2d at 903 n. 9.

13. Stare decisis also applies to this Court's own decisions in which various constitutional challenges to the Tort Claims Act have been rejected, including those raised under Article I, Section 11 of the Pennsylvania Constitution. *See generally Germantown Savings Bank v. City of Philadelphia,* 98 Pa.Cmwlth. 508, 512 A.2d 756, 760–61 (1986) (holding Section 8553(d) of the Tort Claims Act, 42 Pa.C.S. § 8553(d), not violative of equal protection because classification of plaintiffs who receive insurance benefits differently from those who do not was rationally related to legitimate government interests in clearly defining extent to which political subdivision was at financial risk); *Matteo by Matteo v. City of Philadelphia, Department of Public Health Family Medical Services,* 99 Pa.Cmwlth. 152, 512 A.2d 796, 797 (1986) (rejecting argument that the Tort Claims Act violated equal protection by barring suits for medical malpractice committed by local agencies and employees while such suits against Commonwealth agencies and employees were not barred); *Gill v. County of Northampton,* 88 Pa.Cmwlth. 327, 488 A.2d 1214, 1216 (1985) (statutes prohibiting medical malpractice actions against local agencies and their employees do not violate Article I, Section 11 of the Pennsylvania Constitution guaranteeing access to courts); *Brown v. Quaker Valley School District,* 86 Pa.Cmwlth. 496, 486 A.2d 526, 528 (1984) (declining to address the challenge to the constitutionality of Section 8553, which limits the amount of damages which may be recovered against a governmental agency because the Tort Claims Act granting governmental immunity to the school district is constitutional and barred the action); *Cerrone by Cerrone v. Milton School District,* 84 Pa.Cmwlth. 395, 479 A.2d 675, 676–77 (1984) (concluding that the Tort Claims Act does not exceed the General Assembly's powers under Article I, Section 11 of the Pennsylvania Constitution or violate the Equal Protection Clause under the United States Constitution); *Morris v. Montgomery County Geriatric and Rehabilitation Center,* 74 Pa.Cmwlth. 363, 459 A.2d 919, 920 (1983) (rejecting the constitutional challenge to the Tort Claims Act under Article I, Section 11 of the Pennsylvania Constitution because stare decisis binds the Court under *Carroll* ); *Rob-*

Claims Act does not violate Article I, Section 11.

## II. *Article III, Section 18 of the Pennsylvania Constitution— "Anti–Cap"*

Zauflik next argues that the Tort Claims Act violates Article III, Section 18 of the Pennsylvania Constitution, which bars the General Assembly from capping compensatory damages unless the case involves workers' compensation.[14] Zauflik contends that the approach in *Smith* of resorting to historical developments[15] in order to reject what she refers to as the "unambiguous and unequivocal" language of Article III, Section 18 was fundamentally wrong. (Zauflik's Br. at 39.) Zauflik argues that the constitutional language should have been applied as written because it is unambiguous and mandatory, citing *Commonwealth v. McNeil*, 808 A.2d 950, 954 n. 2 (Pa.Super.2002) (stating that no rules of construction should be applied when the constitution's plain meaning is clear).

■ In *Smith*, our Supreme Court considered arguments that were similar, if not identical, to Zauflik's position here. Relying upon *Singer v. Sheppard*, 464 Pa. 387,

394, 346 A.2d 897, 900 (1975),[16] for the history of this constitutional provision, our Supreme Court stated that " 'the full scope and meaning of [Article III, Section 18] should be considered . . . in light of the evil intended to be remedied by its adoption.' " *Smith*, 512 Pa. at 135, 516 A.2d at 309 (quoting *Singer*, 464 Pa. at 396, 346 A.2d at 901) (alteration in original). Noting that "Article III, Section 18[, formerly Section 21,] was drafted in 1872 and 1873, and adopted in 1874[17] in response to . . . certain powerful private interests . . . influenc[ing] legislation which limited recovery in negligence cases filed against them," the Supreme Court in *Smith* determined that the intended scope of Article III, Section 18 "was to prevent private parties from securing an unfair limitation of liability through influence in the General Assembly." *Id.* at 135–36, 516 A.2d at 309–10 (emphasis omitted). The Supreme Court explained that, when this provision was drafted, the common law doctrine of sovereign immunity was in existence and "the Framers would have had no occasion to apply the prohibition against limiting damages to government" because "[i]t was not

---

son v. Penn Hills School District, 63 Pa. Cmwlth. 250, 437 A.2d 1273, 1277 (1981) (holding, in part, that the Tort Claims Act does not violate Article I, Section 11).

14. Article III, Section 18 provides, in relevant part: "The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of reasonable [workers' compensation benefits]; . . . but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property." Pa. Const. art. III, § 18.

15. Zauflik points out that *Smith* stated that Article III, Section 18 was enacted in the 1880s in order to prevent certain private parties such as railroads and other common carriers from securing a liability limitation from the General Assembly, but that the Framers

were not concerned about governmental tort liability at this time. (Zauflik's Br. at 38.)

16. In considering similar constitutional challenges, including Article III, Section 18, to a now repealed version of no-fault motor vehicle insurance containing limitations on recovery by private parties, not governmental entities, the Pennsylvania Supreme Court in *Singer* traced the history of Article III, Section 18. *Singer*, 464 Pa. at 396–98, 346 A.2d at 901–02.

17. "Except for an amendment in 1915 exempting work[ers'] compensation laws from the requirement that recoveries not be limited, and the renumbering of the section in 1967, [Article III,] Section 18 [, previously Section 21,] has remained unchanged." *Smith*, 512 Pa. at 135 n. 4, 516 A.2d at 309 n. 4.

for more than 100 years after this [constitutional] provision was drafted that this Court ... abrogated common-law sovereign immunity" in *Mayle. Id.* at 136, 516 A.2d at 310. Stating that " '[a]n Act of Assembly will not be declared unconstitutional unless it *clearly, palpably and plainly* violates the Constitution,' " and that "any uncertainty must be resolved in favor of its validity," *id.* at 136 n. 5, 516 A.2d at 310 n. 5 (quoting *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963)) (emphasis in original), the Supreme Court concluded that "the Framers would have had no reason to concern themselves with governmental liability in tort." *Id.* at 136, 516 A.2d at 310. Thus, the Supreme Court determined that Article III, Section 18 "does not operate to restrict the General Assembly from providing for less than full recovery for injuries to persons or property where the defendant is a governmental entity." *Id.*

As we previously have stated, "[e]ven if it were true that ... *Smith* w[as] wrongly decided, we, as an intermediate appellate court are bound by the decisions of the Pennsylvania Supreme Court and are powerless to rule that decisions of that Court are wrongly decided and should be overturned." *Griffin v. Southeastern Pennsylvania Transportation Authority,* 757 A.2d 448, 451 (Pa.Cmwlth.2000). "[A]s an intermediate appellate court, we are bound by the opinions of the Supreme Court." *Nunez v. Redevelopment Authority of the City of Philadelphia,* 147 Pa.Cmwlth. 577, 609 A.2d 207, 209 (1992). Thus, any argument that *Smith* was wrongly decided is an issue for a forum other than this Court.

### III. *Article V, Section 1 of the Pennsylvania Constitution— "Separation of Powers"*

Zauflik contends that the statutory cap of the Tort Claims Act constitutes a legislative invasion of the judicial power of the Commonwealth that is vested in a unified judicial system. Because the judicial power inherently encompasses the power to remit a jury award based upon the evidence presented at trial, capping damages as a matter of law on grounds wholly unrelated to the record evidence is, Zauflik argues, a legislative invasion of the judiciary's power of remittitur. Therefore, permitting the General Assembly to place a statutory cap on a jury award of damages violates basic principles of the separation of powers doctrine, which " 'is not merely a matter of convenience or of governmental mechanism ... [but] preclude[s] a commingling of these essentially different powers of government in the same hands.' " *Stilp v. Commonwealth,* 588 Pa. 539, 577, 905 A.2d 918, 940–41 (2006) (quoting *O'Donoghue v. United States,* 289 U.S. 516, 530, 53 S.Ct. 740, 77 L.Ed. 1356 (1933)).

■ Article V, Section 1 of the Pennsylvania Constitution provides:

The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

Pa. Const. art. V, § 1. This Court has stated that "our courts have integrated to some extent the separation of powers doctrine and Article V of the Pennsylvania Constitution," noting that "[t]he separation of powers doctrine ... stands for the proposition 'that the executive, legislative, and judicial branches of government are equal and none should exercise powers exclusively committed to another branch.' " *Seit-*

*zinger v. Commonwealth,* 25 A.3d 1299, 1305–06 (Pa.Cmwlth.2011) (quoting *Jefferson County Court Appointed Employees Association v. Pennsylvania Labor Relations Board,* 603 Pa. 482, 491 n. 8, 985 A.2d 697, 703 n. 8 (2009)), *aff'd,* —— Pa. ——, 54 A.3d 20 (2012). Under this doctrine, the courts may "invalidate statutory provisions that intrude on the judicial prerogative to regulate" a particular area of law. *Id.* at 1306–07.

In *Seitzinger,* a law firm filed a petition for review seeking a declaration that the fee limitation provisions in the Workers' Compensation Act [18] violated the separation of powers doctrine. *Id.* at 1305. This Court's inquiry focused on the Supreme Court's supervisory powers under Article V, Section 10(c) [19] of the Pennsylvania Constitution to regulate the practice of law. "[G]uided by the specific authority vested in the Supreme Court through Article V of the Pennsylvania Constitution," this Court stated that "the separation of powers doctrine provides authority for the courts of the Commonwealth to invalidate statutory provisions that intrude on the judicial prerogative to regulate the practice of law," and concluded that there can be a violation of the separation of powers doctrine if a legislative action " 'impairs the independence of the judiciary in its administration of justice.' " *Id.* at 1305–07 (quoting *Jefferson,* 603 Pa. at 498–99, 985 A.2d at 707). However, in exercising its well-settled

"power to regulate . . . the 'practice of law,' " *Gmerek v. State Ethics Commission,* 751 A.2d 1241, 1254 (Pa.Cmwlth. 2000), the Supreme Court promulgated the Rules of Professional Conduct which permit the General Assembly to enact limitations on contingent fees.[20] *Seitzinger,* 25 A.3d at 1304. Therefore, this Court stated that it would be "counterintuitive to surmise that if the Supreme Court elected to defer to a legislative judgment regarding some aspect of the operation of the judiciary, such as the remuneration for attorneys representing claimants, the separation of powers doctrine would be implicated," but because the General Assembly had the power to impose a limitation on attorney fees, there was no violation of the separation of powers. *Id.* at 1305, 1307.

■ District contends that this reasoning applies here. It appears that, in view of Article I, Section 11's provision that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct," Pa. Const. art. I, § 11, and the Supreme Court's holding in *Smith* that this provision specifically reserves for the General Assembly the power to enact a statutory cap on the tort liability of the Commonwealth and its subdivisions, *Smith,* 512 Pa. at 134–35, 516 A.2d at 309, the statutory cap in this case does not violate the separation of powers doctrine

---

**18.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

**19.** Article V, Section 10(c) provides in relevant part:

> [t]he Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . and for admission to the bar and to practice law . . . if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the ju-

> risdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose.

Pa. Const. art. V, § 10.

**20.** Rule 1.5(c) of the Pennsylvania Rules of Professional Conduct provides, in relevant part, that "[a] fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law." Pa. R.P.C. 1.5(c).

as it has been interpreted in its integration with Article V, Section 1. Given the Supreme Court's interpretation, it would appear to contravene the separation of powers doctrine for the courts to strike the statutory cap that the General Assembly, in its constitutional purview and judgment, has enacted.

### IV. *Article I, Section 6 of the Pennsylvania Constitution— "Right–to–Jury"*

Zauflik argues that the Tort Claims Act violates Article I, Section 6 of the Pennsylvania Constitution because it invades the exclusive province of the jury, "as factfinder, to hear evidence on damages and decide what amount fairly and completely compensates the plaintiffs." *Matheny v. West Shore Country Club*, 436 Pa.Super. 406, 648 A.2d 24, 24 (1994). Therefore, in capping any jury award greater than $500,000, Zauflik contends that the Tort Claims Act deprives her of the compensation for the damages that the jury awarded as warranted by the evidence.[21] Zauflik asks this Court to look to other states that have invalidated damages caps as violating their state constitutional right to a jury trial. Citing *Watts v. Lester E. Cox Medical Centers*, 376 S.W.3d 633 (Mo. 2012), in which the Missouri Supreme Court overruled precedent to strike down a statutory cap on non-economic damages in medical malpractice cases as violating the Missouri Constitution's guarantee of a right to a jury trial, and contending that the jury trial provision in the Missouri Constitution is basically the same as the Pennsylvania provision, Zauflik highlights the rationale in *Watts* that the cap "directly curtails the jury's determination of damages and, as a result, necessarily infringes

on the right to trial by jury when applied to a cause of action to which the right to jury trial attaches at common law." *Id.* at 640.

District counters that there is no question that Zauflik's claims were, in fact, heard by a jury of her peers. District contends that the Supreme Court's holdings, in *Carroll* and *Smith*, that the Tort Claims Act is constitutional bind this Court to these holdings "regardless of how it came to its conclusion," citing *Rendell v. Pennsylvania State Ethics Commission*, 961 A.2d 209, 216 (Pa.Cmwlth.2008), *rev'd on other grounds*, 603 Pa. 292, 983 A.2d 708 (2009). District points out that Zauflik's claims were brought pursuant to the Tort Claims Act against a governmental entity and were claims which did not exist at the time of the adoption of the Pennsylvania Constitution. *Smith*, 512 Pa. at 136, 516 A.2d at 309. District disagrees that the courts in this Commonwealth have not addressed the right to a jury trial in connection with the Tort Claims Act, citing *Germantown Savings Bank v. City of Philadelphia*, 98 Pa.Cmwlth. 508, 512 A.2d 756, 760 n. 5 (1986), in which the claimants contended that "Section 8553(d) impinge[d] upon their constitutional right to a jury trial." Stating that "[n]owhere is there any language in that section which would restrict that right," this Court concluded that "[t]he jury may award such damages as the evidence warrants," although we recognized that the "award ... must be reduced by the amount of insurance proceeds paid to the [claimants]." *Id.* Notably, *Germantown Savings Bank* did not examine whether a constitutional right to a jury trial existed, but merely concluded that Section 8553(d) did not violate it, stat-

---

**21.** The record indicates that Zauflik also pursued claims against other tortfeasors, such as the bus manufacturer, which were not subject to the limitation of Section 8553(b). (Prae-

cipe to File Notice to Attorney General, February 2, 2012, at 1; Letter from Zauflik's Counsel to Attorney General (February 1, 2012) at 1.)

ing that "[i]t seems obvious to us that [claimants'] right to a jury trial is unimpaired by Section 8553(d)." *Id.*

District further contends that, because the Tort Claims Act was not enacted for more than two hundred years after the adoption of the Pennsylvania Constitution, tort claims against governmental entities created by the Tort Claims Act did not exist at the time of the adoption of the Pennsylvania Constitution. District relies upon *Smith*, in which our Supreme Court stated that the Framers did not envision any suits against governmental defendants, but "were addressing themselves to private ... defendants." *Smith*, 512 Pa. at 135, 516 A.2d at 309. District concludes that, because these claims did not exist when the Constitution was adopted, Article I, Section 6 does not include the right to a jury trial pursuant to the Tort Claims Act.

■ Article I, Section 6 of the Pennsylvania Constitution provides in relevant part:

> Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. Furthermore, in criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.

Pa. Const. art. 1, § 6. "On its face, Article I, Section 6 preserves the following two things: the right to trial by jury shall be as heretofore; and the right to trial by jury remains inviolate." *Blum by Blum v. Merrell Dow Pharmaceuticals, Inc.*, 534 Pa. 97, 108, 626 A.2d 537, 542 (1993). " 'Such guaranty is that the right shall remain as heretofore; that is, as it was when the Constitution was adopted.' " [22] *Commonwealth ex rel. City of Pittsburgh v. Heiman*, 127 Pa.Super. 1, 190 A. 479, 481 (1937) (quoting *Premier Cereal and Beverage Co. v. Pennsylvania Alcohol Permit Board*, 292 Pa. 127, 133, 140 A. 858, 859 (1928)). "Thus, the use of the word 'heretofore' in Section 6 of Article I of our Constitution preserves the right to trial by jury in cases where that right existed at common law." *Blum*, 534 Pa. at 110, 626 A.2d at 543.

Zauflik focuses upon whether the fact-finding function of the jury was usurped by the statutory cap, thereby invading the jury's province and burdening it with onerous conditions and restrictions, citing *Custren v. Harleysville Insurance Co.*, 390 Pa.Super. 251, 568 A.2d 639, 641 (1990) (holding that sanctions imposed by a local rule of court were not burdensome and, therefore, did not violate due process). Although Zauflik suggests that the cap imposes a remittitur that tramples the right to a jury trial, the Supreme Court has stated that a remittitur withstands constitutional scrutiny when it is subject to a specified standard and a reason for the remittitur is provided. *See Haines v. Raven Arms*, 539 Pa. 401, 402–03, 652 A.2d 1280, 1281 (1995) (stating that to insure that the correct standard for remittitur is being applied, a trial court must articulate both the conclusion and the reasons supporting a reduction of the verdict when finding that a verdict shocks its conscience). Zauflik further suggests that we should follow the reasoning of the Missouri Supreme Court in *Watts*, which focused on the fact-finding power of the jury, holding

**22.** Our Supreme Court has observed that "Art. I, [S]section 6 has been construed as requiring the right to trial by jury in all matters in which the right to a jury trial has been recognized at the time of the adoption of the Constitution of 1790." *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 117, 394 A.2d 932, 938 (1978) (citing *Van Swartow v. Commonwealth*, 24 Pa. 131 (1854)).

that the determination of damages was a factual finding and, therefore, the statutory cap interfered with that right. However, in *Watts*, the statutory cap was imposed on non-economic damages awarded to the injured parties on the tort claims between *private parties only*; there were no governmental entities involved and, therefore, no consideration of governmental immunity as in the case now before us. *Watts*, 376 S.W.3d at 635. Therefore, the analysis in *Watts* is of limited assistance in the inquiry before us.

■ Notwithstanding Zauflik's arguments, jury action is not without permissible limitations. The Supreme Court has held that "it is within the province of the [General Assembly] to determine that certain bars to suit are, in its judgment, needed for the operation of local government," *Carroll*, 496 Pa. at 370, 437 A.2d at 397, and to "provid[e] for less than full recovery for injuries to persons or property where the defendant is a governmental entity," *Smith*, 512 Pa. at 136, 516 A.2d at 310. The Supreme Court clarified that "[i]f the legislature may abolish a cause of action, surely it may also limit the recovery on the actions which are permitted." *Id.* at 134, 516 A.2d at 309. The Supreme Court's reasoning leads to the proposition that, because it is within the authority of the General Assembly to have established an exception to governmental immunity in the Tort Claims Act that permits Zauflik to bring this action against District *ab initio*, that authority also encompasses the right to further limit the exceptions to immunity, including the amount of damages recoverable. *Id.* Notably, in *Mishoe v. Erie Insurance Co.*, 573 Pa. 267, 824

A.2d 1153 (2003), our Supreme Court stated that:

> [t]he great purpose of the constitution in providing that "trial by jury shall be as heretofore, and the right[ ] thereof remain inviolate," was not to contract the power to furnish modes of civil procedure in courts of justice, but to secure the right of trial by jury in its accustomed form before rights of person or property shall be finally decided. Hence the right of trial by jury as it then existed was secured, and the trial itself protected from innovations which might destroy its utility and its security as a palladium of the liberties of the citizen. But beyond this point there is no limitation upon legislative power in constructing modes of redress for civil wrongs, and regulating their provisions.

*Id.* at 280, 824 A.2d at 1160 (quoting *Haines v. Levin*, 51 Pa. 412, 414 (1866) and Pa. Const. art. I, § 6).

Based on the arguments presented,[23] and our binding precedent, we cannot say the trial court erred. Zauflik appears to have received a trial by jury in its accustomed form and beyond that point, given the arguments presented here and our binding precedent, we can find "no limitation upon [the] legislative power" which constructed the mode for her redress and regulated it with the cap. *Id.*

### V. *Equal Protection and Due Process*

We next examine Zauflik's assertion that the statutory cap on damages of the Tort Claims Act violates the equal protection guarantees of the Pennsylvania and United States Constitutions,[24] both facially and as

---

23. Here, Zauflik does not analyze whether she had a constitutional right to a jury trial for her claims in this case or whether such a right, in fact, existed "as heretofore"—that is, at the time of the adoption of the Pennsylvania Constitution. Based on our disposition of this issue, we need not decide this legal question.

24. "The equal protection provisions of the Pennsylvania Constitution are analyzed by this Court under the same standards used by

applied. While contending that the standard of review should be "strict scrutiny," Zauflik nonetheless maintains that the statutory cap must fail equal protection review under any constitutional standard—strict scrutiny, intermediate, or even rational basis.[25]

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause of the Pennsylvania Constitution provides that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26.

### A. Level of Scrutiny

■ In analyzing Zauflik's equal protection challenge to the statutory cap, we must first determine the appropriate level of judicial scrutiny to be applied. Generally, to determine whether a statute creating classifications between people—in this case, the statutory cap that limits damages recoverable by claimants injured by a governmental entity but not by private, nongovernmental entities—is justified, there must be a determination of which of three types of classes is involved: (1) a suspect class or fundamental right; (2) an important or sensitive interest; or (3) none of the above. *Smith*, 512 Pa. at 138, 516 A.2d at 311.

■ Strict scrutiny of a legislative classification applies "only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."[26] *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (footnotes omitted). Thus, when a classification involves a suspect class or a fundamental right, it must be justified by a

---

the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution." *Love v. Borough of Stroudsburg*, 528 Pa. 320, 325, 597 A.2d 1137, 1139 (1991) (citing *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 144, 477 A.2d 1302, 1305 (1984)).

**25.** As stated by the dissent in *Smith*:
> regardless of whether we employ a "strict scrutiny," "heightened scrutiny," or "rational basis" standard of review, the classifications created by the [Tort Claims] Act based solely on the identity and status of the tort-feasor are arbitrary, do not bear a fair and substantial relation to any legitimate state purpose, and deny to the claimants the enjoyment of their civil rights and equal protection of the laws under the state and federal constitutions.

*Smith*, 512 Pa. at 144, 516 A.2d at 314 (Larsen, J., dissenting) (emphasis omitted).

**26.** The United States Supreme Court has stated that the following are fundamental rights requiring strict scrutiny analysis: *Roe v.*

*Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (right of a uniquely private nature); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (right to vote); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right of interstate travel), *overruled in part by Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (rights guaranteed by the First Amendment); and *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right to procreate). The United States Supreme Court has stated that the following are suspect classes requiring strict scrutiny analysis: *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race); and *Oyama v. California*, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (ancestry).

compelling government interest and the classification must be strictly construed. *Smith*, 512 Pa. at 138, 516 A.2d at 311. If the classification involves an important government interest, then an intermediate standard of review is applied, which is also referred to as a heightened standard. *Id.* Under this intermediate standard, to withstand constitutional challenge, classifications "must serve important governmental objectives and must be substantially related to [the] achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Finally, if the classification does not involve either fundamental rights, suspect classes, or sensitive or important government interests, it will be "upheld if there is any rational basis for the classification." [27] *Smith*, 512 Pa. at 138, 516 A.2d at 311.

In *Smith*, in analyzing the claimant's equal protection challenge to the statutory cap, the Pennsylvania Supreme Court ruled out the application of the strict scrutiny standard, stating that no fundamental rights were implicated and "[t]he governmental interest, preservation of the public treasury as against the possibility of unusually large recoveries in tort cases, is, self-evidently, an important governmental interest." *Id.* at 139, 516 A.2d at 311. The Supreme Court stated that:

> [n]o fundamental rights are implicated because the right to a full recovery in a tort suit brought against ... political subdivisions is expressly limited by [the Supreme Court's] interpretation of Arti-

cle III, Section 18 and Article I, Section 11 of the Pennsylvania Constitution (permitting the legislature to limit recovery against governmental units).

*Id.* Additionally, in *Lyles v. Department of Transportation*, 512 Pa. 322, 325 & n. 2, 516 A.2d 701, 702–03 & n. 2 (1986) (involving a claimant who was rendered a quadriplegic from an automobile accident who challenged the $250,000 statutory cap on damages against the Commonwealth), the Pennsylvania Supreme Court relied upon the analysis in *Smith* to apply the intermediate standard of review. The Supreme Court stated:

> [t]he only difference in principle between the *Smith* case and [*Lyles*] is that [the latter] concerns a statute that limits damages which may be recovered against the Commonwealth, whereas the *Smith* case concerned a limitation on damages recoverable against political subdivisions of the Commonwealth. As we discussed in *Smith*, such a limitation of damages violates neither Article III, Section 18 of the Pennsylvania Constitution, nor the Equal Protection provisions of the federal or Pennsylvania constitutions. Since a statutory limitation on damages recoverable against political subdivisions of the Commonwealth is not unconstitutional, and since, for purposes of this case, there are no legally significant differences between a statute which limits damages recoverable against agencies of the Commonwealth and a

---

**27.** The United States Supreme Court has articulated the rational basis test as follows:

> The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offend-

ed only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan v. State of Maryland*, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

statute which limits damages recoverable against the Commonwealth itself[, the Supreme Court affirmed the molding of the $750,000 jury verdict to $250,-000].

*Id.* at 325, 516 A.2d at 702–03. The Supreme Court noted in *Lyles* that, in its view, the interest of the government in protecting the public treasury against large and unpredictable tort recoveries was an important one and, because this interest was implemented by a classification closely related to that interest, the heightened level of scrutiny must be applied, not rational basis. *Id.* at 325 n. 2, 516 A.2d at 703 n. 2.

∎ Notwithstanding these precedents Zauflik, nevertheless, contends that the Supreme Court should have applied strict scrutiny because the right to obtain a full tort recovery and the right to jury trial are fundamental rights requiring a strict scrutiny analysis. Zauflik argues that the Supreme Court applied the incorrect test when it applied intermediate scrutiny and requests this Court to reconsider the test and apply strict scrutiny.

∎ In contending that the statutory cap of the Tort Claims Act should not pass intermediate or even rational review, Zauflik relies on *Ayala.* However, *Ayala* involved the abrogation of common law immunity, which is different from the case here involving a statute that reflects a legislative policy decision. In *Ayala,* the Supreme Court specifically recognized that the General Assembly had the constitutional authority to limit recovery on the basis of a defendant's status. *Ayala,* 453 Pa. at 600, 305 A.2d at 885. In addressing the constitutionality of the statutory cap in *Smith* and *Lyles,* as noted above, the Supreme Court applied the intermediate standard of review in concluding that the classification between persons who are injured by political subdivisions and those who are not closely relates to the General Assembly's public policy decision to protect the public treasury against large and unpredictable tort recoveries. *Lyles,* 512 Pa. at 325 n. 2, 516 A.2d at 703 n. 2; *Smith,* 512 Pa. at 139, 516 A.2d at 311. Similarly, this Court also explained that the Tort Claims Act was "an attempt to stabilize the political subdivision's ability to obtain insurance coverage by defining the risks to be covered." *Robson v. Penn Hills School District,* 63 Pa.Cmwlth. 250, 437 A.2d 1273, 1276 (1981) (stating that "[o]ur examination of the [Tort Claims] Act directs us to the conclusion that its purpose is to establish certain limits to the liability to which political subdivisions become exposed as a result of the abrogation of the doctrine of governmental immunity by the holding in *Ayala* "). Because this Court is bound by these precedents, we do not reach Zauflik's argument to reconsider the standard of review that the Supreme Court has already established.[28]

### B. *The Classifications*

Zauflik further argues that the statutory cap violates equal protection principles because it creates an impermissible classification between persons who are injured by political subdivisions and those who are not. Zauflik contends that the interest here, e.g., the protection of the public treasury against unexpected and unusually large tort recoveries, is not addressed by

---

**28.** Zauflik further argues that the Tort Claims Act violates principles of substantive due process; however, the analysis of a substantive Due Process claim is the same analysis as that performed under an Equal Protection claim. *Griffin,* 757 A.2d at 452. In *Griffin,* this Court held that "as our Supreme Court found that the statutory cap did not violate equal protection principles in *Lyles* [and *Smith* ], we must conclude that the statutory cap does not violate substantive due process." *Id.*

the statutory classification because political subdivisions have the ability to insure against this type of negligence and, in this case, District, in fact, obtained such insurance, demonstrating its capacity to protect itself. Therefore, because political subdivisions can obtain insurance just as private entities must, Zauflik argues that there is no important or even rational basis to insulate political subdivisions from the cost of their accidents.

In *Smith,* our Supreme Court was aware that "there is a $500,000 limit on recoveries in tort cases filed against political subdivisions of the Commonwealth, but there is no such limit on private parties." *Smith,* 512 Pa. at 137, 516 A.2d at 310. In analyzing this discrepancy, the Supreme Court relied upon *James v. Southeastern*

*Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984),[29] to state that "the Fourteenth Amendment does not absolutely prohibit the states from classifying persons differently and treating the classes in different ways," but that " '[i]f classifications are drawn, then the challenged policy must be reasonably justified.' " *Smith,* 512 Pa. at 137–38, 516 A.2d at 310 (quoting *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 68, 436 A.2d 147, 155 (1981)). The Supreme Court stated that the "preservation of the public treasury as against the possibility of unusually large recoveries in tort cases" justified the classifications between the classes, i.e., those suing the political subdivisions having a statutory cap versus those suing private parties without a cap,

**29.** *James* involved an equal protection challenge involving classifications of those bringing a personal injury suit against a transit authority with a requirement that notice be provided within six months of the date of injury as a prerequisite, and those who brought such suits against defendants not subject to the six-month notice provision who had two years to bring their suits. *James,* 505 Pa. at 146, 477 A.2d at 1306. Observing that the different limitation periods created two classes with unequal access to the courts, the Supreme Court "look[ed] to the Constitution to see if the right infringed ha[d] its source, explicitly or implicitly, therein" and examined Article I, Section 11 (the "open courts" provision) for whether the right to sue the Commonwealth, or a political subdivision thereof, was a fundamental right that would have created suspect classifications. *Id.* The Supreme Court concluded that

> Art. I, § 11 of the Pennsylvania Constitution explicitly reserves to the Commonwealth the power to determine in which cases it will be sued. This power, in turn, is derived from the Eleventh Amendment to the United States Constitution, permitting the states to exercise sovereign immunity, should they choose so to do. We conclude, therefore, that there is no "fundamental right" to sue the Commonwealth, for such right is explicitly limited by Art. I, § 11 of the Constitution of Pennsylvania.

*Id.* The Supreme Court determined that, in cases where the Commonwealth has consented to suit, such as this one, James' right of access to the courts was not a fundamental right since the Commonwealth, through the General Assembly, can permit or restrict the right altogether. Therefore, this was not a fundamental right subject to strict scrutiny review, but was an important right subject to an intermediate or heightened standard of review. *Id.* at 147, 477 A.2d at 1306–07. As an important interest, the classification must be closely related to the objectives of the legislation in order to pass constitutional scrutiny under the equal protection clauses. The Supreme Court determined that "the governmental purpose of the . . . notice provision has been articulated by the Superior Court in prior cases, where it . . . held that the purpose of the notice requirement 'is to provide the defendant with the opportunity to make timely investigation and avoid the difficulty of defending against stale and fraudulent claims.' " *Id.* at 148, 477 A.2d at 1307 (quoting *Dubin v. Southeastern Pennsylvania Transportation Authority,* 219 Pa.Super. 476, 281 A.2d 711, 712 (1971)). Therefore, the six-month notice requirement was closely related to the objectives of the legislation and it was upheld as constitutional.

because this was "self-evidently, an important governmental interest." *Id.* at 139, 516 A.2d at 311. The Supreme Court concluded that, because "the statute promoted an important governmental interest the realization of which was closely related to the classification," this was sufficient to uphold the statute. *Id.*

This Court has, repeatedly, held that the purchasing of liability insurance did not waive, or essentially negate, the statutory cap. For example, in a case challenging a molded jury verdict where a township had purchased excess insurance coverage, this Court concluded that the reasoning applicable to the construction of Section 8553 was equally applicable to Section 8558 of the Torts Claims Act.[30] *Mench v. Lower Saucon Township,* 159 Pa.Cmwlth. 116, 632 A.2d 1011, 1012–14 (1993). "The fact that the Legislature provided the municipalities with the power to purchase liability insurance and provided for the collection of judgments against local agencies does not indicate that the Legislature provided for a waiver of the statutory limitation on damages." *Id.* at 1013. Similarly, in *Spisak v. Downey,* 152 Pa.Cmwlth. 220, 618 A.2d 1174, 1175 n. 1 (1992), this Court stated that the statutory cap reflects a reasonable legislative "attempt to stabilize a political subdivision's ability to obtain insurance coverage by defining the risks to be covered." It was noted in *Spisak* that the legislative history demonstrated that the General Assembly was aware that municipalities were insured, but nevertheless chose to limit its potential liability.

Regarding the issue of insurance coverage and its effect on the limitation of damages provision in [Section] 8553, this Court stresses that the plain language of the statute is clear and unambiguous and in no manner evinces a legislative intent to waive the damages limitation upon purchase of liability insurance by a local agency. The legislation was passed as an attempt to stabilize a political subdivision's ability to obtain insurance coverage by defining the risks to be covered ... and legislative history demonstrates that the General Assembly was aware that municipalities were insured but nevertheless chose to limit their potential liability.

*Id.* (citation omitted). Additionally, "[t]his Court note[d] that the absolute defense of governmental immunity, particularly the statutory limit on damages, is nonwaivable. Nor is governmental immunity subject to any procedural device that could render a local agency liable beyond the exceptions granted by the legislature." *Dunaj v. Selective Insurance Co. of America,* 167 Pa. Cmwlth. 93, 647 A.2d 633, 635 (1994). Moreover, although "[t]he parties herein discuss the reasons why [District] purchased the excess liability coverage ... the rationale behind the [District's] decision to purchase liability insurance in excess of the statutory cap is not open to speculation by this Court." *Id.* at 635 n. 3.

### C. Re-balancing the Interests

■ Zauflik further argues that the Tort Claims Act violates Equal Protection principles as applied to this case because District can, and actually did, insure against judgments such as Zauflik was awarded. Therefore, there is no important or even rational basis to support insu-

---

**30.** 42 Pa.C.S. § 8558. Section 8558 provides for judgments against an insured local agency as follows:

> If the judgment is obtained against a local agency that has procured a contract or policy of public liability insurance protec-

tion, the holder of the judgment may use the methods of collecting the judgment as are provided by the policy or contract and the laws of the Commonwealth to the extent of the limits of coverage provided. *Id.*

lating political subdivisions from the cost of their accidents. In sum, Zauflik essentially requests this Court to rebalance the interests at stake. By contending that other interests outweigh the statutory cap's protection of the public treasury against unusually large tort awards, Zauflik argues that additional important public interests are at stake, such as the need to provide strong incentives to avoid accidents and discourage a culture of complacency by governmental entities, especially where the entity already possesses insurance substantially in excess of the statutory cap, as in this case.

Zauflik encourages this Court not to arrive at a decision that is born of an unyielding mold of rigidly formed concrete and emphasizes that the existence of the excess policy in this case raises additional interests among the governmental entity, the public treasury, and the injured party that have not been fully weighed in any constitutional analysis. This includes weighing whether District's purchase of the excess policy shows that District had the capacity to reasonably protect itself from at least $11 million of the jury verdict and whether this could, to some extent, play a role in any rebalancing of the inter-ests in this case, particularly since the Supreme Court's rationale in *Smith,* upholding the statutory cap, was to protect the public treasury against unusually large tort awards. Zauflik contends that the statutory cap actually encourages a culture of complacency, which undermines the important goals of safety and accident avoidance, and that we should weigh whether the protection of the public fisc comes at the expense of the protection of public safety. There is also a question as to whether the interests may balance differently when the function being performed is not essential to the governmental agency's purpose, as in this case of bus transportation for school students, in which the risks of motor vehicle accidents can seemingly be better insured by outsourcing that non-essential function rather than imposing the statutory cap. Finally, there is an issue as to whether the public treasury would be better served in this case, where insurance is available, to permit the motor vehicle liability insurance system to provide for Zauflik's future and long-term health care and other services rather than relying on financial support and services from various governmental agencies.[31]

---

31. There are differences of opinion regarding the balancing of these interests. For example in *A Theory of Governmental Damages Liability: Torts, Constitutional Torts, and Takings,* 9 U. Pa. J. Const. L. 797, 798 (2007), Lawrence Rosenthal states that theories of governmental tort liability are "riddled with immunities unknown in the private sector [in] a confusing patchwork seemingly without explanation," but

> generally fall within two broad camps: the instrumentalists [who] claim that tort liability promotes efficient investments in safety by visiting financial consequences on those who underinvest in safety, and the advocates of corrective justice [who] claim that tort liability embodies a moral obligation of culpable parties to provide compensation for losses for which they are fairly considered responsible.

*Id.* (footnotes omitted). Rosenthal states that, despite "an emerging consensus among legal scholars that governmental tort liability lacks a coherent justification," he "mean[s] to show that the emerging consensus is wrong" and statutory caps are defensible. *Id.* at 799, 863.

However, authors James J. Dodd and Martin A. Toth, in *The Emperor's New Clothes: A Survey of Significant Court Decisions Interpreting Pennsylvania's Sovereign Immunity Act and Its Waivers,* 32 Duq. L.Rev. 1 (1993), include a discussion of the legislative history of sovereign and governmental immunity that reveals that the greatest concerns of the General Assembly were economic factors and how a balance was attempted to be struck with waivers, such as those found in the Tort Claims Act, providing some relief from the harsh rule of immunity. *Id.* at 1–14, 40–96, 106–08.

■ We agree that "[s]tare decisis is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish." *Ayala*, 453 Pa. at 606, 305 A.2d at 888. The very tragic circumstances of this case weigh heavily on this Court. However, as an intermediate appellate court confronting significant and unwavering precedent, our role must be one of restraint. In sum, whether the existence of the excess policy or a different governmental interest could be a factor that changes the balance of interests in the constitutional analysis involved in this case is intriguing, and perhaps appealing, it is not within this Court's purview.

## VI. *Sanction for the Discovery Violation*

■ Zauflik also contends that the trial court erred by only imposing a sanction in the amount of $5,000 for District's discovery violation involving the excess policy, when it should have struck the defense of the immunity of the Tort Claims Act alto-

gether.[32] Zauflik maintains that trial courts possess the power to strike a local political subdivision's reliance on the Tort Claims Act as an appropriate discovery sanction, citing *Taylor v. City of Philadelphia*, 692 A.2d 308, 313 (Pa.Cmwlth.1997) (stating that sanctions are procedural in nature, not substantive, and "the concept that immunity can never be waived does not extend to conduct affecting the efficient operation of the judicial system"). Zauflik further argues that, even where only a single discovery violation has occurred, the trial court may impose a sanction "in order to effectuate the orderly administration of justice and processing of cases [and] actual prejudice need not be shown," relying on *Sahutsky v. Mychak, Geckle & Welker, P.C.*, 900 A.2d 866, 869 (Pa.Super.2006) (imposing the sanction of *non pros* and noting that a finding of willfulness or prejudice is no longer required per the amendment to Rule 4019 of the Pennsylvania Rules of Civil Procedure). Zauflik believes that a severe sanction is warranted in this case because District did not disclose the excess policy until

---

Another viewpoint is expressed by George W. Conk, in *Will the Post 9/11 World Be a Post–Tort World?*, 112 Penn St. L.Rev. 175 (2007). The article espouses a philosophy about governmental immunity that can be summarized in the following excerpt:

Switching the focus of the tort debate from cost reduction and corporate governance to principles of personal responsibility clarifies the principles and remedies for which we stand. Tort law, along with the right of action by an injured person against a wrongdoer, strengthens the bonds of civility among citizens and between government and citizens. Tort's broad reach expresses not a culture of irresponsibility but rather of accountability, in which all actors are governed by ... equivalent standards of conduct, care dictated by capability and circumstance. When responsibility principles are identified as central, we may find greater receptiveness among legislators, and greater judicial willingness to reject

arbitrary legislated limits on actions and on remedies.

*Id.* at 258.

32. Rule 4019 of the Pennsylvania Rules of Civil Procedure permits a trial court to order sanctions where a party fails to provide sufficient discovery. Pa. R.C.P. No. 4019. This Rule further permits a trial court to enter an "order with regard to the failure to make discovery as is just." Pa. R.C.P. No. 4019(c)(5). A trial court has discretion whether to sanction a party for violating a discovery order and regarding how severe to sanction a party. *Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa.Super.1997). Factors to be considered include the prejudice to the opposing party, whether the prejudice may be cured, the willfulness or bad faith of the party in violation and the number of violations. *Reilly v. Ernst & Young, LLP*, 929 A.2d 1193, 1200 (Pa.Super.2007).

after the verdict which occurred three years after the trial court ordered complete disclosure of insurance information. Zauflik contends that this violation caused her to suffer prejudice because timely knowledge of the excess policy may have prompted her to litigate her lawsuit in a different manner. Zauflik further argues that the civil litigation system is prejudiced when a party fails to comply with discovery obligations and disregards court orders upon which litigants rely to make critical decisions in a case, including what resources to devote to the case. Zauflik concludes that striking the damages cap of the Tort Claims Act is proper because the excess carrier stood to benefit the most from continued concealment of the excess policy and *Taylor,* 692 A.2d at 313, explicitly authorizes such a sanction.

Because a trial court has discretion over whether to impose a sanction and its severity, *Rohm and Haas Co. v. Lin,* 992 A.2d 132, 142 (Pa.Super.2010), this Court "will not disturb such a sanction absent an abuse of that discretion." *Reilly v. Ernst & Young, LLP,* 929 A.2d 1193, 1199 (Pa.Super.2007). "An abuse of discretion is not merely an error in judgment. It requires a showing of manifest unreasonableness, partiality, ill-will, or such lack of support as to be clearly erroneous." *Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 454 Pa.Super. 512, 686 A.2d 1, 5 (1996). A party challenging a trial court's discretionary judgment "on appeal bears a heavy burden." *Id.* at 5.

Moreover, the "[d]efense of governmental immunity is an absolute defense, directly analogous to our holding in work[ers'] compensation cases and is not waivable ... nor is it subject to any procedural device that could render a governmental agency liable beyond the exceptions granted by the legislature." *In re Upset Sale*

*(Skibo),* 522 Pa. 230, 232, 560 A.2d 1388, 1389 (1989) (citing *LeFlar v. Gulf Creek Industrial Park No. 2,* 511 Pa. 574, 581, 515 A.2d 875, 879 (1986) and *Wilson v. Philadelphia Housing Authority,* 517 Pa. 318, 536 A.2d 337 (1988)). Therefore, this Court cannot sanction a political subdivision by ordering an express waiver of its governmental immunity, consistent with the well-established precedent that governmental immunity is an absolute defense that is not subject to any form of procedural waiver.

*Taylor* and *Sahutsky* are inapposite. *Taylor* did not authorize a trial court to impose a punitive monetary sanction tantamount to striking the statutory cap of the Tort Claims Act, but entered default judgment on liability only and ordered a trial on damages. *Taylor,* 692 A.2d at 311, 313–14. Moreover, the entry of judgment by default on liability was the result of repeated discovery violations, and represented the enforcement of the parties' own prior stipulation. *Id.* at 311. *Sahutsky* is distinguishable because, like *Taylor,* it involved a litigant's repeated disregard for the discovery process and refusal to provide discovery despite multiple judicial warnings to do so. *Sahutsky,* 900 A.2d at 867, 869–70. Because District's discovery violation was isolated and governmental immunity is an absolute defense that includes the statutory limitation on damages, there is no manifest unreasonableness, partiality, ill-will, or such lack of support as to be clearly erroneous here. We, therefore, hold that the trial judge did not abuse his discretion.

## VII. *Conclusion*

As tragic as the circumstances are in this case, we are constrained by the precedential case law that has previously upheld the constitutionality of the statutory cap of the Tort Claims Act multiple times. It is the role of the General Assembly, not this

Court, to make the difficult policy decisions and enact them into law if such decisions receive the support of the necessary majority. Thus, we are constrained to affirm the trial court's orders: molding the jury verdict of $14,036,263.39 to $500,000 to reflect the application of Section 8553(b) of the Tort Claims Act; adding delay damages in the amount of $2,661.63 to the molded verdict rather than to the original jury verdict; and sanctioning District $5,000 pursuant to Rule 4019 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 4019, for not timely disclosing the existence of an excess insurance policy.

For the foregoing reasons, we affirm the Orders of the trial court.

Judge BROBSON did not participate in the decision in this case.

### ORDER

NOW, July 3, 2013, the Orders of the Court of Common Pleas of Bucks County in the above-captioned matter are hereby **AFFIRMED.**

DISSENTING OPINION BY Senior Judge FRIEDMAN.

Because I believe that the statutory cap is unconstitutional as applied because it violates Ashley Zauflik's right to receive the jury's award, I respectfully dissent.

Pennsbury School District provides transportation for its students, unlike other school districts that contract this service out to third-party bus companies. While there is no statutory prohibition against Pennsbury's conduct, had transportation been provided by a private transportation company, Zauflik would have been entitled to receive the full benefit of the jury's award of over $14,000,000. Instead, the legislature, by enacting section 8553 of what is commonly known as the political Subdivision Tort Claims Act (Act), 42 Pa. C.S. § 8553, has capped the amount Zauflik may recover at $500,000.[1]

Surely the legislature can devise legislation that more fairly and adequately addresses this gross disparity. A school district that opts to furnish a service often provided by a private entity should be required to insure itself in the same manner as a private entity and be equally liable for the full amount of an award.[2] Had such legislation been enacted prior to Zauflik's injury, the protection of the public fisc would not be impaired, nor would the award's effect be compromised.

In that regard, I am troubled by the apparent constitutional impairment in disregarding the jury's award in this case. By imposing a statutory cap, the legislature has arguably infringed on rights guaranteed by the Pennsylvania Constitution.[3]

---

1. I note that the $500,000 cap has not been modified since 1980. According to the Consumer Price Index Inflation Calculator, $1 in 1980 had the same buying power as $2.52 in 2007. The Consumer Price Index Inflation Calculator is available at: *http://data.bls.gov.*

2. Section 1362 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 13–1362 provides that "[a]ll private motor vehicles employed in transporting pupils for hire shall be adequately covered by public liability insurance in such amount as the board of school directors shall require."

3. In the context of medical malpractice cases, several state supreme courts have held that statutes capping noneconomic damages are unconstitutional. *See Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt,* 286 Ga. 731, 691 S.E.2d 218, 224 (2010) (holding that statute capping noneconomic damages in medical malpractice cases violated state constitutional right to a jury trial); *Lebron v. Gottlieb Memorial Hospital,* 237 Ill.2d 217, 341 Ill.Dec. 381, 930 N.E.2d 895, 914 (2010) (ruling that noneconomic damages cap violated separation of powers clause in the state constitution); *Ferdon v. Wisconsin Patients Compensation Fund,*

Article I, Section 6 of the Pennsylvania Constitution provides in pertinent part:

> Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. Furthermore, in criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.

Pa. Const. art. I, § 6. This constitutional provision anticipates that a jury's award will not be hollow and that, in the event of a monetary award for a plaintiff, he or she will be entitled to receive the full benefit of the award. Consistent with the inviolate right to a trial by jury is the inviolate right to receive the jury's award. I note that "a compensatory damage award 'must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence at trial.'" *Paves v. Corson,* 569 Pa. 171, 175, 801 A.2d 546, 549 (2002) (quoting *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 637 (1995)). The award here, limited by the statutory cap in the Act, bears no such relationship.

Because I believe that the $500,000 cap violates Zauflik's right to receive the jury's award, I would conclude that the statutory cap is unconstitutional as applied. For this reason, I dissent.

284 Wis.2d 573, 701 N.W.2d 440, 491 (2005) (concluding that noneconomic damages cap in medical malpractice cases violated equal protection clause of the state constitution).